GLENVIEW RURAL FIRE PROTECTION DISTRICT, Plaintiff-Appellee, *v.* FRANK E. RAYMOND, Defendant-Appellant.

(No. 59511;

First District (3rd Division)—April 18, 1974.

Harvey J. Barnett, of Rosenthal and Schanfield, of Chicago, for appellant.

Anthony T. Buckun, of Chicago (David F. Holland, of counsel), for appellee.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

The principal issue raised on this appeal is whether a fire protection district has the power to enact an ordinance regulating use of various types of buildings and structures, and requiring, among other things, the installation of automatic sprinkler systems in the common areas of these buildings. Fire protection districts were created by statute in Illinois in 1927. Ill. Rev. Stat. 1971, ch. 127½, par. 21 et seq.

On July 5, 1972, the Glenview Rural Fire Protection District (herein the District) filed a quasi-criminal complaint against the defendant, an architect and developer, charging him with violation of its ordinance. The complaint charged that on or about March 20, 1972, the defendant had failed to install an automatic sprinkler system in the common areas in an apartment building located in the District as required by section 4, par. 14.4(f) of its ordinance. Defendant filed motions alleging that the ordinance was ultra vires, unclear, and without proper standards. After denying these motions, the trial court, sitting without a jury, heard evidence and found defendant guilty as charged and assessed a fine of $100. In addition to his primary contention noted above, defendant also argues that the District's ordinance is inconsistent and vague; that it is arbitrary and capricious; that the ordinance constitutes an unlawful delegation of

authority to the fire chief; and that a portion of the ordinance was never enacted by the District.

The District comprises a large area to the west and north of the Village of Glenview. It includes within its territory, however, a portion of the village of Glenview which was annexed to the village but is still serviced by the District. The District adopted a fire protection code by its ordinance on April 8, 1971. The ordinance, with exceptions and an amendment we shall note, consisted of the adoption of three codes: the Fire Prevention Code of the American Insurance Association, the Cook County Building Code, and the Illinois State Fire Code. None of the foregoing codes required the installation of automatic sprinklers in a multi-family apartment building of ordinary masonry construction. However, the District added sub-paragraph 14.4(f) to section 14.4. This sub-paragraph required the installation of automatic sprinklers in basements, cellars, storerooms, hallways of all apartment buildings more than three stories in height and of apartment buildings more than two stories in height if in excess of 5,000 square feet.

In September 1971, defendant began construction of a 90-unit, 3-story apartment building having an area in excess of 5,000 square feet. The plans did not provide for the installation of an automatic sprinkler system and, in fact, none was ever installed in the building.

Because of our view of the proceedings, it is unnecessary to set forth the facts adduced at trial except to say that only the defendant introduced expert testimony. The expert testimony was to the effect that the installation of sprinklers in the stairways and hallways of the building in question would have no appreciable effect on the life-safety of the building from the standpoint of controlling a fire.

The principal issue as to whether the District had the power to enact such an ordinance is one of first impression in Illinois.

■■ In our judgment, the District ordinance can be upheld only if authority for its enactment has been granted to fire protection districts by the General Assembly in the Act creating fire protection districts (herein the Act) because it is the only enactment authorizing or empowering fire protection districts. Fire protection districts, like all municipal corporations, derive their existence and all their powers from the legislature. They possess no inherent powers and must be able to point out the statute which authorizes their acts. (*City of Chicago v. Arbuckle Brothers* (1931), 344 Ill. 597, 176 N.E. 761.) In *City of Chicago v. Ingersoll Steel & Disc Division* (1939), 371 Ill. 183, 20 N.E.2d 287, the court stated at page 186:

> "Municipal corporations derive their existence and all their powers from the General Assembly. They possess no inherent powers. If

they desire to legislate upon a particular subject or occupation they must be able to point out the statute which authorizes this to be done. Statutes conferring powers upon municipal corporations are strictly construed and any fair or reasonable doubt that an asserted power exists is resolved against the municipality."

■■ The legislative intent should be sought primarily from the language used in the statute, and where the statutory language is certain and unambiguous, the only legitimate function of the court is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill.2d 75, 256 N.E.2d 758.) In the absence of a statutory definition indicating a different legislative intention, courts will assume that statutory words have their ordinary and popularly understood meanings. *People v. Blair* (1972), 52 Ill.2d 371, 288 N.E.2d 443.

The Act does not expressly authorize districts to prescribe the manner of constructing buildings, or to enact ordinances in regards to buildings so as to make them safe from fire hazards. The District maintains, however, that it derives the power necessary to pass such an ordinance from the phrase "regulate the prevention and control of fire therein," contained in two sections, 21 and 31, of the Act. In our view, an examination of the meaning and context of the phrase as contained in the Act does not support the District's position.

Section 21 is the purposes clause of the Act and reads in part as follows:

"It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety, welfare and convenience of the public, it is necessary in the public interest to provide for the creation of municipal corporations known as fire protection districts and to confer upon and vest in the fire protection districts all powers necessary or appropriate in order that they may engage in the acquisition, establishment, maintenance and operations of fire stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein and provide as nearly adequate protection from fire for lives and property within the districts as possible and regulate the prevention and control of fire therein; * * *."

The announced purpose of a fire protection district therefore is to provide physical protection against fires by means of fire departments and apparatus. The words "in order that they may" contained in the first portion of the above section become vital in construing the entire section. The words "in order that they may" reveal the purpose for the creation of fire protection districts, and are implicitly found and inferred in the latter portion of the paragraph as follows:

"and to confer upon and vest in the fire protection districts all powers necessary or appropriate in order that they may engage in the acquisition, establishment, maintenance and operation of fire stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire therein and [in order that they may] provide as nearly adequate protection from fire for lives and property within the districts as possible and [in order that they may] regulate the prevention and control of fire therein; * * *."

Consequently, both grammatically and logically, it is clear that the phrase "regulate the prevention and control of fire therein" does not enlarge the powers given to fire protection districts, but is simply descriptive of the express powers and purposes granted to such districts.

The foregoing analysis is also applicable to the use of the same phrases found in section 31 of the Act. Section 31 reads in part as follows:

"The board of trustees of any fire protection district incorporated under this Act has the power and it is its legal duty and obligation to provide as nearly adequate protection from fire for all persons and property within the said district as possible and to prescribe necessary regulations for the prevention and control of fire therein. Consistent with this duty, the board of trustees may provide and maintain life saving and rescue equipment services and facilities."

The phrase indicates that the District may adopt regulations relating to the operation and maintenance of fire stations and apparatus. Again, the phrase is not a broad legislative grant but is merely descriptive of the District's express powers to provide protection from fires by means of fire departments and equipment. No one challenges the right of the District to regulate its firemen and equipment. However it appears implausible that the inclusion of this phrase in the Act manifests a legislative intent to give fire protection districts a power tantamount to a building code. If the legislature had intended to grant such broad powers to the District, it would have expressly said so.

We also believe that it can be demonstrated, when the purposes of the Act are examined, that the legislature did not intend to give the District the power it claims under the present ordinance. The intention of the legislature in a statute is to be ascertained not only from the language used but also from reasons for enactment and the purposes to be thereby attained. *People ex rel. Cason v. Ring* (1968), 41 Ill.2d 305, 242 N.E.2d 267; *In re Estate of Curtis* (1963), 28 Ill.2d 172, 190 N.E.2d 723.

■■ Since 1871, by express language in the Cities and Villages Act (Ill. Rev. Stat. 1961, ch. 24, par. 11—8—2), cities and villages have been given the specific powers to regulate and control fire hazards in and about buildings. They also have the specific power to prescribe the strength and manner of construction of buildings. (Ill. Rev. Stat. 1961, ch. 24, par. 11—30—4.) Since cities and villages had been expressly granted the authority to control the construction and maintenance of buildings and to regulate buildings to prevent fire hazards, there was no need on the part of the legislature to give such powers to fire protection districts when they were created in 1927. The simple and obvious reason for the Act was to enable citizens in an area to have a fire fighting service, and to maintain and equip a fire department. We believe it significant that when in 1949 in the Counties Act (Ill. Rev. Stat., ch. 34, par. 422), the General Assembly extended to counties broad regulatory powers over buildings and fire hazards, the legislature acted expressly and with great specificity.

■■ Considering the language and the purposes of the Act, we conclude that there is more than a fair and reasonable doubt that the legislature intended to grant the power claimed in the present ordinance to fire protection districts. (See *City of Chicago v. Ingersoll Steel & Disc Division* (1939), 371 Ill. 183, 20 N.E.2d 287.) We hold, therefore, that the requirement in the ordinance for the installation of sprinkler systems in certain types of apartment buildings in the District is void.

Because of our holding, we deem it unnecessary to consider defendant's additional argument that a grant of such powers to fire protection districts would lead to irreconcilable conflicts with other municipalities. It is also unnecessary to comment on defendant's other contentions.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY and MEJDA, JJ., concur.