HUTCHIE T. MOORE, Plaintiff-Appellant, *v.* CHICAGO POLICE BOARD, Defendant-Appellee.

First District (4th Division)   No. 62564

Opinion filed September 22, 1976.—Rehearing denied October 20, 1976.

Wayne B. Giampietro and Elizabeth Hubbard Seidman, both of Chicago, for appellant.

William R. Quinlan, Corporation Counsel (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Hutchie T. Moore, appeals from a judgment of the Circuit Court of Cook County affirming the decision of the Police Board of the City of Chicago to discharge him from the Chicago Police Department.

The issues on appeal are whether Rules 2 and 8 of the Chicago Police Department are unconstitutionally vague, indefinite and uncertain, and whether the Chicago Police Board's findings with respect to rules 2, 8 and 36 are contrary to the manifest weight of the evidence.

On May 18, 1972, the plaintiff, an off-duty police officer, was doing repair work in the vestibule of an apartment building which he owned at 5446 West Fulton Street in the city of Chicago. He had received information that one of his tenants, Odell Phillips was responsible for three recent burglaries in the building, and when Phillips walked into the building at about 12:40 p.m., Moore attempted to arrest him. He testified that when Phillips came in, he told him two witnesses said he was responsible for the burglaries. If it was okay, they would go to the district station where he could be confronted by the witnesses, and if he was innocent, the matter could be cleared up. Phillips said he was not responsible for the burglaries and he would not go to the station. Moore then told him he was under arrest and told Jeff Dampier, who was in the hallway, to call the police. Phillips told Moore he had no right to hold him in the hallway because he was not on duty, and attempted to leave the building. When Moore blocked the front door, Phillips attempted to go up the stairs. Moore grabbed his arm, Phillips jerked away, and some blows were struck. Moore took his gun out of his belt, and after a brief struggle in which Phillips reached for the gun, Moore struck Phillips on the side of the head with the gun. At this time the police arrived. Moore showed Officer Spolar his star and identification number, and then accompanied Phillips to the hospital where he received 29 stitches behind his left ear. Moore stated he could not have subdued Phillips without hitting him with his gun.

Phillips testified that when he entered the vestibule, Moore told him he knew he was breaking into the apartments. Moore told Jeff Dampier to call the police and grabbed his arm and started pushing and shoving him. Moore pushed him up the steps, pulled out his gun and hit him on the side of the head, after which he stood there pointing the gun at him. Moore did not inform him he was under arrest.

Officer Spolar testified that upon questioning him, Moore stated he was arresting Phillips for investigation of burglary and that Phillips had tried to get away, and he hit him in the head with his gun. Phillips told Spolar that he had walked away from Moore just before being hit.

Officer Ritenouer testified he investigated the incident and talked to Phillips as he was undergoing treatment in the hospital. Phillips told him Moore was going to place him under arrest, and he did not feel that Moore was justified in doing so. When Moore put his hands on him, he jerked away and was struck on the head. Phillips said he was aware Moore was a police officer.

The three burglaries in the building occurred on April 18, 1972, at Leo Gordon's apartment, on April 26, 1972, at Ronald Wigfall's apartment, and on May 16, 1972, at John Cox's apartment. There had also been damage to the building during the same period of time. Moore testified

that Leo Gordon told him on the morning of June 18, he saw Phillips leave the building through the rear with a black and white television set on the previous day. Gordon did not say it was his set.

Moore also testified he had a conversation with Beulah Boyd right before the incident, and she told him she saw Phillips and two others enter a second-floor window of the apartment building from the back porch. After the incident Moore asked her to return to the station with him, but she said she did not want to get involved and refused to identify anyone.

At the hearing Beulah Boyd testified she could observe Moore's apartment building from her house, which was about 100 feet away. Moore had asked her if she had seen anybody going in an apartment from the porch, and she had answered, "No." She had seen someone coming from the building with something wrapped up which may have been a TV set, but it was not Odell Phillips.

Mrs. Cox testified she had been asked by police officers to go into Phillips' apartment to see whether any of the items taken from her apartment were there, and Phillips had invited her to look all through the apartment. She saw two television sets in the apartment which Phillips identified as belonging to his mother and sister, but neither was the one she lost in the burglary. Phillips testified he had three TV sets in his 3½-room apartment and all three belonged to him.

Officer Mette testified an investigation determined Leo Gordon could place Phillips at the rear of the apartment building with a TV set, but the date was uncertain.

Officer Moore was charged with violating Rules 2, 8 and 36 of the Chicago Police Department. Those rules provide:

> Rule 2 Any action or conduct which impedes the Department's efforts to achieve its goals or brings discredit upon the Department.
>
> Rule 8 Disrespect to or willful maltreatment of any person.
>
> Rule 36 Unlawful or unnecessary use or display of a weapon. Whenever a firearm is discharged by a member, he will immediately make an oral report to the desk sergeant at the district of the occurrence and will follow this with a written report on the prescribed form.

After a hearing on February 15, 1973, the Police Board made the following findings relevant to the issues:

> (5) The Board, after considering all of the evidence and testimony presented in the case, thus finds that the respondent, as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 8, "Disrespect to or willful maltreatment of any person," in that on May 18, 1972, he became involved in an argument and altercation with one Odell Phillips, and without justification struck Odell Phillips on the head

with his service revolver, causing injury to Mr. Phillips' left ear, and then did threaten to shoot Mr. Phillips.

(6) The respondent as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 36, "Unlawful or unnecessary use or display of a weapon," in that on May 18, 1972, he drew his service revolver and struck one Odell Phillips, causing injury to his left ear and then did threaten to shoot Mr. Phillips.

(7) The respondent, as charged herein, contrary to the rules and regulations of the Department of Police, is guilty of violating Rule 2, "Any action or conduct which impedes the Department's efforts to achieve its goals," in that on May 18, 1972, he did without justification, draw his service revolver and did strike one Odell Phillips on the head causing injury to Mr. Phillips' left ear, and did then threaten to shoot Odell Phillips.

The Police Board then discharged Moore from the Chicago Police Department after ten years as a police officer.

The standard of review in an administrative hearing is set forth in section 11 of "An Act in relation to judicial review of decisions of administrative agencies" (Ill. Rev. Stat. 1973, ch. 110, par. 274) which provides that agency findings on questions of fact are "prima facie true and correct." The law is well settled that a reviewing court may not set aside a finding of an administrative agency unless it is against the manifest weight of the evidence. *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469; *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552; *Avent v. Police Board* (1964), 49 Ill. App. 2d 228.

In this case all three findings of the Board stated the plaintiff threatened to shoot Phillips, a finding which is not supported by the record. All three findings indicated either expressly or implicitly that the plaintiff acted without justification. Thus, all three findings ignored the salient detail of the incident which was that the plaintiff was attempting to arrest Phillips for burglary. This was clearly not a private dispute in which Officer Moore resorted to self help, and the characterization of the incident as an "argument and altercation" as stated in Finding No. 5 is manifestly incorrect.

The evidence adduced at the hearing shows the plaintiff was engaged in making an arrest when he struck Phillips. Moore testified that when Phillips walked in the hallway, he immediately advised Jeff Dampier to call the police, and Phillips corroborated that testimony. Moore testified he expressly told Phillips he was placing him under arrest. Phillips testified he was not so advised, but he was aware Moore was a police officer and knew Jeff Dampier was calling the police. He told Officer

Ritenouer that Moore tried to arrest him but he was not justified in doing so. There can be no doubt that Phillips knew he was being arrested.

The evidence is not in dispute that Phillips resisted when Moore attempted to prevent him from leaving the vestibule of the apartment building. Moore testified he blocked Phillips from leaving through the front door and struggled with him when he attempted to go up the stairs to avoid the arrest. Officers Spolar and Ritenouer testified Phillips stated he was struck when he jerked away from Moore's grasp. Phillips apparently did not tell either of them Officer Moore had initially pushed and shoved him.

Thus, the evidence establishes Phillips knew Moore was a police officer, did not believe he had authority to arrest him, and physically resisted arrest in some measure. Only the extent of his resistance is controverted. There was no evidence to suggest there had been previous rancor between Moore and Phillips which would have precipitated aggressive action on the part of Moore, as was the case in *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, and there was evidence Moore had some reason to believe Phillips was guilty of burglary.

The Illinois Criminal Code clearly provides that a person may not use force to resist arrest, even if the arrest is not justified, and to do so is itself a crime. (Ill. Rev. Stat. 1973, ch. 38, pars. 7—7, 31—1.) Recent cases have affirmed it is a criminal offense for a person to resist or obstruct the performance by one known to be a police officer of any authorized act within his official capacity, and even an unlawful arrest without a warrant or probable cause is an authorized act for purposes of section 31—1. (*People v. Locken* (1974), 59 Ill. 2d 459; *People v. Suriwka* (1971), 2 Ill. App. 3d 384. Also see *People v. Gilman* (1974), 17 Ill. App. 3d 827, and *People v. Gnatz* (1972), 8 Ill. App. 3d 396.) Therefore, the plaintiff was not acting contrary to the dictates of his office when he apprehended Odell Phillips.

A police officer may use force in effecting an arrest according to the standards set forth in section 7—5 of the Illinois Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 7—5):

> "(a) A peace officer * * * need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defendant himself or another from bodily harm while making the arrest. However, he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such

force is necessary to prevent death or great bodily harm to himself or such other person, or when he reasonably believes both that:

(1) Such force is necessary to prevent the arrest from being defeated by resistance or escape; and

(2) The person to be arrested has committed or attempted a forcible felony or is attempting to escape by use of a deadly weapon, or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay.

(b) A peace officer making an arrest pursuant to an invalid warrant is justified in the use of any force which he would be justified using if the warrant were valid, unless he knows that the warrant is invalid."

The statute provides a police officer may use "any force which he reasonably believes to be necessary to effect the arrest," and it is apparent the actions of Odell Phillips in ignoring Moore's office and in physically resisting his grasp left him no alternative but to use force. While it is possible to speculate that the force used to effect the arrest was excessive in light of the 29 stitches required to close the wound, it is certain that Officer Moore was within the statutory dictates in the amount of force used. Burglary, the offense for which Phillips was arrested, is a forcible felony as defined by section 2—8 of the Act (Ill. Rev. Stat. 1973, ch. 38, par. 2—8), and Phillips was resisting arrest. Therefore, even if it were argued that the use of the gun as a club was "force likely to cause death or great bodily harm," the statutory requirements of section 7—5 were met, and no legal inferences may be drawn against Officer Moore.

While this court may not judge the credibility of the witnesses or substitute its judgment for that of the administrative agency (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357; *Suttle v. Police Board* (1973), 11 Ill. App. 3d 576), it is clear the findings of fact of the Police Board of the City of Chicago were against the manifest weight of the evidence. Because our decision is based on an evaluation of the evidence, it is not necessary to consider the plaintiff's argument with respect to the constitutionality of the Police Rules.

For these reasons, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

JOHNSON, P. J., and ADESKO, J., concur.