THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* LINDA BROWN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 76-1185

Opinion filed May 8, 1978.

268

Sidney A. Jones, III, of Mitchell, Hall & Jones, P.C., of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Linda Brown, LeMon Cole, Angela Brown and Helen Moore were charged with battery in violation of section 12—3(a)(2) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a)(2)) and resisting a peace officer in violation of section 11—33 of the Municipal Code of Chicago (Chicago Municipal Code 1975, ch. 11, sec. 33). After a jury trial, defendants Linda Brown and LeMon Cole were convicted of resisting a police officer in violation of the Municipal Code of the City of Chicago and fined $100 each. The jury reached no verdict on any of the other charges against any of the defendants. Linda Brown and LeMon Cole appeal and contend: (1) the complaints against defendants were insufficient to state an offense; (2) the defendants' right to reciprocal discovery was violated; (3) the trial court improperly excluded a bloodstained garment; (4) the trial court improperly prohibited defendant Brown from testifying that a statement used to impeach her testimony was given to the police department's Office of Professional Standards; (5) the trial court improperly refused defendants' instructions on the use of deadly force; (6) the trial court improperly influenced the jury to render a verdict; (7) the verdicts of guilty of resisting a police officer were legally inconsistent with the failure to render verdicts on other charges against Linda Brown and LeMon Cole and on the other charges against their co-defendants; (8) defendants were denied due process by judicial bias or other misconduct; and (9) defendants were not proved guilty by a clear preponderance of the evidence.

Chicago police officer Gilbert Broderick testified that on May 5, 1975, he was on crowd control and traffic duty at McCormick Place, in Chicago. At about 9 p.m., he went to the lobby outside the Arie Crown Theater, where a popular music concert was taking place. In the lobby

two security guards, Henry Moses and Cornelius Williams, were telling a group of young people near the doors to the theater that if they did not have tickets they should leave. Defendants Brown and Cole and their co-defendants and an unidentified male youth remained near the doors after the guards' announcement. Broderick asked the defendants if they had tickets to the concert and all said they did not. Broderick told defendants to leave if they did not have tickets. Cole responded, "F. U., pig. We don't have to leave." Linda Brown said, "We came to see the concert and we are staying." Broderick again told defendants to leave if they did not have tickets. Cole made the same insulting reference to the officer and said that he did not have to go anywhere. Broderick told defendants again to leave. After defendants replied with obscenities, Broderick stated, "You are going to all be placed under arrest. You are all under arrest." He tried to grab the unidentified youth and Cole by the arm and they pulled away from him. Defendants ran to the west end of the building and toward a ramp leading to the lower level parking lot. Near the bottom of the ramp, Broderick caught the unidentified youth and Cole by the arms and Cole struck Broderick on the head and Linda Brown struck him on the back and head. He kept yelling that they were under arrest. Defendants struck him several times. They ran into the parking lot and Broderick could not find them. He did not pull his service revolver. Sometime after returning to the lobby, Broderick saw defendants there and arrested them. Defendants were read *Miranda* warnings while on the escalator going to the top floor. On cross-examination, the officer stated he was in good physical condition after the altercation.

Joseph Marszalek, a Chicago police officer, testified that he worked with Broderick on May 5, 1975. He saw defendants Cole and Linda Brown struggling with Broderick on the ramp to the parking lot. He heard Broderick give defendants their *Miranda* warnings. At the precinct station, Marszalek saw Linda Brown briskly rubbing her nose, causing it to bleed. He asked if she wanted first aid and she responded with expletives. Marszalek testified that Broderick was out of his sight before he saw Broderick on the ramp struggling with defendants.

Henry Moses, a security guard at McCormick Place, testified that on May 5, 1975, after the doors to the Arie Crown Theater were closed, there were still approximately 50 to 60 people gathered near the doors. Moses announced that those without tickets should leave the building. Broderick told the defendants to leave the building if they did not have tickets. After defendants uttered many profanities, they started moving from the door to the west end of the building. Moses heard the officer tell defendants that they were under arrest. Defendants then began to run. Broderick caught them on the ramp. Moses saw them strike the officer. During the

scuffle, Broderick's elbow struck Linda Brown's nose. Defendants told the officer they wanted to go to their car in the underground garage.

Linda Brown testified in her own behalf that Officer Broderick pushed her and her co-defendants toward the west end of the building. She told him that she had to wait for her brother. They ran to the parking lot and the officer chased them. When she turned around, she saw the officer aim his gun at her and her friends. Broderick put his gun away, caught her on the ramp, grabbed her neck and punched her in the face. She was released and went to the garage. There they met Officer Hightower. From the garage they called her father on the telephone and Officer Hightower spoke to her father. They were not taken into custody until they rode the escalator with Hightower. A large group of policemen took her into custody. She did not strike the officer.

Brown stated she told the police officer she had to wait for her brother, although in fact he was not at McCormick Place that night. She told a police investigator the truth about her seven-year-old brother not being at McCormick Place. She probably called Officer Broderick something other than a pig. She stated she did not strike or touch Officer Broderick. She did not rub her nose at the police station.

LeMon Cole testified in his own behalf. He stated that they parked their car across Lake Shore Drive from McCormick Place on May 5, 1975. He, Linda Brown, Helen Moore and Angela Brown wanted to attend a popular music concert at McCormick Place. They waited outside the Arie Crown Theater but could not buy tickets. They were told to leave the lobby outside the theater by a police officer. Linda Brown "used vile slanderisms to" the officer. The officer pushed them down the ramp. They began to run from him. Officer Broderick chased them, grabbed Linda Brown around the neck and told her she was under arrest. Broderick then struck her in the nose and dragged her down the ramp. When Linda got away, they ran from Broderick. They called Linda's father. When they got off the escalator, a group of officers surrounded them and arrested them. LeMon Cole denied striking the officer or calling him names.

Chicago police officer Jenkins Hightower testified that he was on duty at McCormick Place on May 5, 1975. He did not recall seeing the defendants on that date. He stated that he recalled no complaints about a police officer striking someone or pulling a gun on someone.

Helen Moore, one of the defendants, testified that Officer Broderick did not tell them that they were under arrest until after he drew his gun. No one interferred with the handcuffing of LeMon Cole when they had come back to the lobby level. She denied ever calling the officer names.

Angela Brown, Linda Brown's sister and a defendant, denied calling Officer Broderick names or striking him.

Arthur Brown, Linda and Angela Brown's father, testified that he spoke to Officer Hightower on the telephone and saw him at McCormick Place on May 5, 1975. He stated that his knowledge of this incident came solely from what Linda Brown told him.

Cornelius Williams, a McCormick Place security guard, testified in rebuttal that he saw defendants striking Broderick while Broderick tried to arrest LeMon Cole. Hightower did not ride the escalator with the defendants.

■■■ Defendants assert that the complaints against them did not inform them of the conduct with which they were charged and were violative of due process. We find no merit in this contention.

Municipal ordinance prosecutions are considered quasi-criminal in character, though civil in form. (*City of Danville v. Clark* (1976), 63 Ill. 2d 408, 348 N.E.2d 844, *cert. denied* (1976), 429 U.S. 899, 50 L. Ed. 2d 184, 97 S. Ct. 266; *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 292 N.E.2d 382.) Pleadings in such cases need not be drawn with the precision of an indictment or information.

In *City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 248 N.E.2d 71, *cert. denied* (1976), 396 U.S. 39, 24 L. Ed. 2d 208, 90 S. Ct. 263, the court considered the sufficiency of a complaint for prosecution of a municipal ordinance violation, concluding:

> "* * *. Examination of the complaints discloses the date and place of the offense, the name of the complainant police officer, the charge that they did then and there 'interfere with him in the performance of his duties', and the chapter and section of the municipal code which was allegedly violated. This was adequate. Moreover there is no question that the defendants were aware of the facts which prompted their arrest. * * *" (42 Ill. 2d 461, 465.)

In the present case, the complaint gives each and every item that the complaint in *Lawrence* gave. It adequately notified defendants of the charges. They were aware of the facts which prompted their arrest. Further, if defendants needed more specific information, they could have moved for more specific statements of the charges. (See *Lawrence; People v. Stout* (1968), 41 Ill. 2d 292, 242 N.E.2d 264.) Defendants did not make such a motion in the trial court.

Defendants argue that they were wrongfully denied the right to reciprocal discovery because they were not permitted access to the complete report of the Office of Professional Standards investigation of defendant Linda Brown's complaint against Officer Broderick. At trial, defendants' counsel demanded the disclosure of "any and all statement * * * of persons who have made statements to the Office of Professional Standards in connection with the Office of Professional Standards

investigation of the complaint of Linda Brown. I cannot get discovery of these things because the rules do not provide for it." Defendants were provided with pretrial statements of persons who testified for the city and Linda Brown's statement to the Office of Professional Standards.

■■ ■ This case involved the prosecution of both misdemeanor and municipal ordinance violation charges. Discovery in misdemeanor cases is governed by *People v. Schmidt* (1974), 56 Ill. 2d 572, 309 N.E.2d 557, which requires the disclosure of a list of prosecution witnesses, any confession of the defendant, evidence negating defendant's guilt and statements of prosecution witnesses for use in impeachment. (*Schmidt*, at 575.) The record shows that the disclosure required by *Schmidt* was given. The Supreme Court Rules provide that pretrial discovery in ordinance violation cases shall be only by leave of court. (Ill. Rev. Stat. 1975, ch. 110A, par. 201(h).) From our examination of the record, we conclude that the trial judge properly exercised his discretion in limiting defendants to the discovery required by *Schmidt*. *Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208, *Williams v. Florida* (1970), 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893, and *People v. Fields* (1975), 59 Ill. 2d 516, 322 N.E.2d 33, relied on by defendants, are inapplicable. They were concerned with the right to reciprocal discovery under alibi statutes.

At trial, the defendants sought to introduce into evidence the blood-stained jacket of Linda Brown. Plaintiff objected that proper foundation was not laid. The trial court sustained the objection. Defendants' counsel made an offer of proof, stating: "Defendants' Exhibit Number 6 for Identification was worn by her on the evening in question. That there are spots on the front of the coat. That the spots on the front of the coat are her blood which came from her, which fell from her nose." The trial court ruled that the testimony offered was insufficient for introduction of the coat into evidence.

Defendants argue that introduction of the coat was necessary to support the credibility of defendant in the face of the testimony of Officer Marszalek that Linda Brown's nose bled because she rubbed it. Defendants claim that her nose bled because Broderick struck it, not because she rubbed it, and that the amount of blood would tend to show she was hit in the nose, not that she rubbed it.

■■ It is essential that a proper foundation be laid for the introduction of demonstrative evidence. (*People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.) The evidence must be connected to the incident and the person involved. (*People v. Parks* (1977), 49 Ill. App. 3d 65, 363 N.E.2d 93.) Here, the proof offered by the defendant was that she wore the coat on May 5, 1975, and that the blood on it came from her nose. The coat was relevant, if at all, only if the blood from her nose fell on the coat on May 5,

1975. Defendant did not offer proof of that fact. Without testimony connecting the blood to that date, the coat was inadmissible.

Further, we have inspected the coat which defendants have included in the record on appeal. We, as was the trial court, are unable to see anything which appear to be blood stains on the dark brown suede material of the coat. Defendants were not harmed by the rejection of this evidence.

Linda Brown testified that she had asked Officer Broderick if she could wait for her brother when the officer told her to leave the lobby. On cross-examination, she stated that she had told a police investigator that her brother was seven years old and was not at McCormick Place on May 5, 1975. On redirect examination, defendants' counsel asked Linda Brown if she knew the purpose of the investigation for which she gave the statement about her brother. The city's objection to that question was sustained. Defendants argue that if Linda Brown had been allowed to testify that the statement had been given to an investigator from the Office of Professional Standards, then her credibility would have been strengthened. They contend the jury would tend to find her more credible because her admission to the investigator of being untruthful to Broderick was against her interest in having her complaint against Broderick sustained by the investigation of his conduct.

■■ Redirect examination is generally limited to the scope of the preceding cross-examination. (*People v. Garner* (1968), 91 Ill. App. 2d 7, 234 N.E.2d 39.) The scope of further examination rests within the sound discretion of the trial court. (*City of Springfield v. Dalby* (1891), 139 Ill. 34, 29 N.E. 860.) The fact that Linda Brown's statement that she had lied to Officer Broderick was given to an investigator from the Office of Professional Standards in connection with her charge of claimed misconduct by Officer Broderick was irrelevant and immaterial to the issue of whether defendants did or did not assault or resist a police officer. The trial court did not abuse its discretion in sustaining the city's objection. See *Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 179 N.E.2d 838.

■■ Defendants further contend that the trial court erred in refusing to give their instructions regarding the use of deadly force. Deadly force is defined as:

> "(a) Force which is likely to cause death or great bodily harm, within the meaning of Sections 7—5 and 7—6 includes:
>> (1) The firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm; and
>> (2) The firing of a firearm at a vehicle in which the person to be arrested is riding." (Ill. Rev. Stat. 1975, ch. 38, par. 7—8.)

Defendants' proferred instructions paralleled the above-quoted section. Defendants presented testimony that Broderick pulled his gun. There is no testimony that he discharged the firearm or struck anyone with it. The cases cited by defendants in support of the use of a deadly force instruction involve a prosecution of a civilian for assault and a civil liability case in which a police officer fired shots. This case clearly does not involve such a situation even if we consider defendants' evidence most favorably to them. There was no evidentiary basis for instructing the jury on the officer's use of deadly force. The trial court properly refused the instructions. *McKasson v. Zimmer Manufacturing Co.* (1973), 12 Ill. App. 3d 429, 299 N.E.2d 38.

Defendants contend that the trial court improperly instructed the jury after it began deliberations, forced the jury to render a verdict and improperly instructed the jury on prosecutorial discretion. In addition, they contend that the jury's verdict was a compromise and cannot stand.

On the second day of the jury's deliberations, the trial judge stated that he did not wish to give a *Prim* instruction to the jury. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Defendants' attorney stated that he would object to the giving of the *Prim* instruction. The parties agreed that the court should ask the jury the following question:

> "If the Court were to ask you to continue your deliberations, do you feel there is a reasonable probability you might be able to arrive at a verdict?"

The parties also agreed that a mistrial be declared if the jury could not reach a verdict. The foreman of the jury responded negatively to the court's question. The court stated it was going to declare a mistrial and discharge the jury. The prosecutor asked the court to ask the jury whether it had reached a verdict on any of the individual charges. The court so asked the jury and the foreman replied, "Tentatively we have on some charges" and, after some colloquy with the court, stated, "I think we could probably reach a verdict on the charges that we have tentatively agreed on at this point with a few seconds." After further colloquy, the jury retired and returned guilty verdicts of resisting a police officer against the defendants who are appealing. Defendants assert that by this colloquy the court forced the jury to reach a verdict. At trial, defendants' counsel did not intervene in or object to the trial court's discussion with the jury. He made no objection or offered any explanation on behalf of defendants.

■■ In *Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 346 N.E.2d 450, the court held that although plaintiffs' counsel explained an instruction to the jury after the court had given a verbal explanation of the instruction, any alleged error was waived because defendant's counsel neither objected to

the court's or counsel's explanation nor offered his own. Here, defendants have waived any error by failing to object to the instructions or colloquy or intervene in the conversation. (See *Pruitt v. Motor Cargo, Inc.* (1961), 30 Ill. App. 2d 222, 173 N.E.2d 851.) Even if there had been no waiver, we do not see that defendants were prejudiced. The trial court's statements cannot be construed as forcing the jury to render a verdict against the two defendants here appealing.

Defendants also contend that the trial court improperly instructed the jury on prosecutorial discretion. During the colloquy, the foreman asked the trial court what the result would be on the hung charges. The court explained that if a jury cannot reach a verdict, a mistrial is declared and the State's Attorney decides whether there will be another trial on the charges. Defendants made no objection to this statement during this colloquy. Nor did counsel request a conference with the court and plaintiff's counsel. The failure to object at trial when there was an opportunity to ensure the proceedings were conducted properly operates as a waiver of this claimed error. *Martin; Pruitt.*

■■ ■ Defendants argue on appeal for the first time that the jury verdicts were compromise verdicts. They rely on the foreman's statement during the colloquy: "Well, we started in to—on some of the charges we have a tentative agreement, but there was some compromise and we don't have a signed statement." They conclude that this language demonstrates that the verdicts reached after further deliberation were compromise verdicts. This contention is not properly before this court because it was not raised when the jurors delivered their verdict and were polled nor was it raised in defendants' written motions for new trial and in arrest of judgment. A written motion for new trial specifying grounds restricts the movant in a court of review to the reasons specified in the motion and all other grounds of review are deemed waived. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.

Even if the claimed error were not waived, we find it without merit. As discussed later in this opinion, the evidence clearly shows that defendants resisted arrest by Officer Broderick.

Defendants Linda Brown, LeMon Cole, Angela Brown and Helen Moore were each charged with battery in violation of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 1—1 *et seq.*) and with resisting a police officer in violation of the Municipal Code of the City of Chicago. The jury was able to reach a verdict only on the charges of resisting a police officer against Linda Brown and LeMon Cole. They contend that the verdicts of guilty against them are legally inconsistent with the failure to render verdicts on the other charges against them and on the charges against their codefendants.

The supreme court in *People v. Hairston* (1970), 46 Ill. 2d 348, 263

N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658, adopted the following doctrine on the legal inconsistency of verdicts:

> "To use the words of the court in *State v. Baird* (Wash.), 93 P.2d 409, 412, we follow the view that: 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' * * * *" (46 Ill. 2d 348, 362.)

See *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61.

The State battery statute states: "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a).) Battery being a violation of the Criminal Code must be proved beyond a reasonable doubt. Resisting arrest, a violation of the Municipal Code of Chicago (Chicago Municipal Code 1975, ch. 11, sec. 33), is a municipal code violation and must be proved by a clear preponderance of the evidence. *People v. Smith* (1974), 19 Ill. App. 3d 704, 312 N.E.2d 355.

■■ ■ Resisting a police officer can be committed by pulling or running away from the officer. (*Moore v. Police Board* (1976), 42 Ill. App. 3d 343, 355 N.E.2d 745; *People v. Suriwka* (1971), 2 Ill. App. 3d 384, 276 N.E.2d 490.) In contrast, battery requires some physical contact or physical harm. Given the different elements in the two charges and the lesser standard of proof required on the charge of which defendants were convicted, the verdicts finding defendants guilty of resisting a police officer and the failure to reach verdicts on the other charges against them and on the charges against their co-defendants were not legally inconsistent.

■■ Defendants argue that "defendants were deprived of due process by judicial bias against defendants in criminal cases." They contend that this argument is supported by the trial court's rulings on the introduction of the blood-stained coat, the reference to Linda Brown's statement to the Office of Professional Standards, the refusal to give instructions on the use of deadly force and the instruction of the jury during deliberations. All of these rulings and actions of the trial court were challenged individually and we have decided that each in turn was correct. Even considered together, they do not reflect any bias by the trial judge against defendants. Correct legal rulings cannot be converted into a case of judicial bias. Defendants also contend that the trial court's statement to other defendants in an unrelated case bears on the fairness of this trial. We disagree. The record shows that the statement had no bearing on this case.

As to the other contentions made, from our examination of the record we conclude they do not make a case of judicial bias against defendants. Indeed, this record reflects a patient and fair handling of this trial.

Finally, defendants argue that they were not proved guilty of the offense charged. Their argument is based on the contention that the testimony was identical against all the defendants and the failure to reach a verdict as to two juvenile co-defendants requires the reversal of the conviction of defendants.

Our reading of the record reveals that the evidence was not identical as to all defendants. The behavior of Linda Brown and LeMon Cole toward the police officer differed substantially from that of Helen Moore and Angela Brown. Linda Brown and LeMon Cole used vile language toward the officer. They responded aggressively to the officer's initial inquiry about the tickets. Both had an intransigent attitude. LeMon Cole was the first person restrained by Officer Broderick and he pulled away from the officer. There was testimony that both defendants struck Officer Broderick. Cole's version of the way he and Linda Brown acted further demonstrates that the evidence against Linda Brown and Cole was different from that of the other defendants. Only where the evidence against each defendant is identical will the acquittal of one require the reversal of the conviction of the other. (*People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680, and cases there cited.) The evidence in this case was not identical as to all of the defendants.

■■ The evidence adduced at trial amply supports the verdict of the jury. Defendants were told to leave the lobby. They refused to leave and shouted epithets at Broderick. Broderick, a uniformed police officer, informed defendants of their arrest. Linda Brown and LeMon Cole ran from him. He pursued them, caught them and attempted to restrain Cole. The defendants struck him and again ran from him. This sequence of events demonstrates that LeMon Cole and Linda Brown resisted arrest by Officer Broderick.

■■ On this record the jury verdicts as to defendants are supported by the clear preponderance of the evidence. See *People v. Smith* (1974), 19 Ill. App. 3d 704, 312 N.E.2d 355.

■■ The City of Chicago has moved to dismiss the appeal for failure of defendants to file the record on appeal within the prescribed time. We took the motion for disposition with the case. Prosecutions of municipal ordinance violations are quasi-criminal in nature but are civil in form and the civil rules of procedure apply at trial and on review. (*City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 292 N.E.2d 382; *City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 354 N.E.2d 572, *rev'd on other grounds* (1977), 68 Ill. 2d 112, 368 N.E.2d 891.) It appears from the uncontradicted affidavit of defendants' attorney that defendants were

granted extensions of time for the filing of the record by the trial court under rules for criminal cases. (Ill. Rev. Stat. 1975, ch. 110A, par. 608.) Although the city correctly argues that Rule 326 (Ill. Rev. Stat. 1975, ch. 110A, par. 326) is applicable to this appeal, we feel that a dismissal of the appeal would be an abuse of discretion because defendants in good faith requested extensions of time for the filing of the record. (*People v. Aliwoli* (1975), 60 Ill. 2d 579, 328 N.E.2d 555; *Groffman.*) The motion to dismiss the appeal is denied.

Judgments affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.