ORLAND FIRE PROTECTION DISTRICT, Plaintiff-Appellant, v. INTRA-STATE PIPING AND CONTROLS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—93—0936

Opinion filed June 29, 1994.—Rehearing denied November 3, 1994.

Karl R. Ottosen, of Ottosen, Sinson & Trevarthen, Ltd., of Wheaton, for appellant.

James E. Mahoney, of Griffith & Jacobson, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Orland Fire Protection District appeals the trial court's rulings finding defendant Intrastate Piping and Controls, Inc., not guilty of violating two local ordinances which require the installation of automatic sprinkler systems with an adequate water supply in buildings of more than 8,000 square feet.

The issue raised by plaintiff on appeal is whether the trial court erred in finding that defendant's facility consists of separate buildings for the purpose of plaintiff's fire safety code (Code). Defendant also challenges whether the ordinance is void for lack of statutory authority and whether the complaints properly charged defendant with violating any ordinance.

We reverse the trial court's finding as contrary to the manifest weight of evidence in that the square footage of the premises exceeds 8,000 square feet as defined by the Code and also find the two issues raised by defendant are without merit.

In 1987 defendant constructed a facility which includes three structures: a warehouse, a garage and an office building. The structures basically stand in a line with the warehouse at one end, the office building at the other end, and the garage in the middle. The two-story office structure is about 6,400 square feet. The garage is about 960 square feet. The size of the warehouse was disputed at trial with plaintiff claiming it measured 8,131 square feet and defendant claiming it measured 7,992 square feet.

The parties do not dispute that (1) the Code requires automatic fire suppression systems to be installed in all buildings or structures with more than 8,000 square feet in the total area; (2) the Code mandates that every automatic sprinkler system have an adequate water supply; (3) defendant's facility includes a warehouse, a garage and an office (although they do not agree whether these structures constitute a single building); (4) the combined square footage of the three structures exceeds 8,000 square feet; (5) defendant has not installed a sprinkler system in its facility; and (6) defendant warranted, by written agreement dated May 18, 1988, that its facility would be in full compliance with the Code by April 5, 1992.

Section F—201.1(6) of the "Definitions" section of the Code provides:

"For purposes of this article, total area means the total area including mezzanines and basements contained within the surrounding exterior walls of a building on all floors and levels added together. The area included within the surrounding exterior walls of a building shall include roof overhangs and extensions and all enclosed extensions. Areas of a building not provided with surrounding walls shall be included within the building area if such areas are included within the horizontal projection of the roof or floor above. Interior walls, including fire walls, fire separation walls, and party walls, shall not be considered as walls which divide a structure into two or more separate buildings, but structures containing such interior walls shall be considered as one building for the purposes of this Section."

On June 25, 1992, plaintiff filed two complaints against defendant. The first complaint (CC 725-530) stated that defendant committed an offense under "chapter 4, section 402.8" by its "failure to install a sprinkler system and supply an adequate supply of water." The second complaint (CC 725-531) stated that defendant violated "chapter 2, section 2—1" because defendant had "no sprinkler system and no water supply."

On August 20, 1992, the trial court conducted a trial where three witnesses testified (Thomas Lia, a fire prevention supervisor for plaintiff; John Nastav, president of defendant; and Edmund Joanis, a civil engineer hired by defendant). Most of the testimony elicited concerned the procedures used to measure the warehouse and the results of the measurements. Plaintiff presented its case maintaining that the warehouse measured 8,131 square feet. Defendant presented its case maintaining that the warehouse measured 7,992 square feet.

Lieutenant Thomas Lia, as the fire prevention supervisor for plaintiff, reviewed defendant's building plans in November 1987 and submitted a report to defendant indicating that the total structure, i.e., "all areas of the building, the office, garage, and warehouse," required a sprinkler fire suppression system. Lia's report was followed by a March 16, 1988, letter which stated that defendant's building measured 8,400 square feet and therefore a sprinkler system must be installed.

In response to these communications, defendant requested and received a variance due to the lack of water supply at its location at that time. The variance allowed defendant until 1990 to install a dry sprinkler system and a subsequent agreement (May 18, 1988) granted defendant until 1992 to bring in the actual water supply. On May 12,

1992, Lia inspected defendant's premises, found no sprinkler systems installed and issued two tickets which became the two complaints later filed by plaintiff.

Lia further testified that no true fire wall stands between the warehouse and the office building. A fire wall is a freestanding structure intended to remain upright to prevent the spread of fire to other structures if the roof falls down on one side. No other structures, such as a roof, can bear on a fire wall, which also must protrude a certain height (two feet and eight inches) above the roof. Lia testified that the wall on defendant's property is not freestanding, does bear the roof and does not protrude the necessary height through the roof.

On June 12, 1992, Lia returned to defendant's building with a fire safety consultant and together they measured the interior dimensions of defendant's warehouse to be approximately 8,131 square feet. Lia explained the difference in measurements from March 1988 to May 1992 by testifying that the earlier measurements were based on the exterior of the building from plans only, not based on actual measurements, because the building had not yet been completed in March 1988. Lia testified that the ordinance requires that the building be measured from the interior walls.

John Nastav testified that he entered the May 1988 agreement based on the March 1988 letter from Deputy Chief Buhs representing that the building exceeded 8,400 square feet. Nastav further testified that the buildings at issue were constructed "concurrently" and "built under one permit." Nastav testified that "[w]e built the warehouse, built the office, and then put two walls up." Each of the three structures, according to Nastav, has a separate, independent freestanding wall and none of them would be considered party walls. The garage was built with freestanding walls caulked at both ends. When constructed, the garage was "caulked so that it would not become a solid building. This masonry does not cross-tie in as a combining structure." A "minor air space" exists between the wall of the warehouse and the wall of the garage, and between the wall of the garage and the wall of the office but to reach the air space would require "digging the parking lot."

Nastav further testified that there are two doorways in the garage, i.e., one doorway from the garage into the warehouse and another doorway from the garage into the office area. There is no double wall between the warehouse and the garage to divide the structures into separate units according to the following testimony by Nastav.

One solid outside wall surrounds the warehouse. Nastav explained that although there are not two walls, i.e., an exterior wall and a fire

wall, "part of the exterior wall became a fire wall because of the way the county made [him] build the building according to their fire code." The type of filler used in a wall determines whether the wall is a fire wall or just an exterior wall. Each of the three buildings has its own separate footing.

Lastly, Edmund Joanis, a civil engineer with Siebert Engineering, testified on behalf of defendant and explained the procedure and the infrared instrument which he used to measure defendant's warehouse and which resulted in a measurement of 7,992.89 square feet. Joanis further opined that plaintiff's consultant could not have rendered an accurate measurement because he used a metal or cloth tape and an improper measuring method.

Thereafter on September 24, 1992, the trial court reviewed the evidence and testimony presented at the August trial and found defendant not guilty as to each of the two charges, *i.e.*, failure to install a sprinkler system and to obtain an adequate water supply for such system. The trial court expressly found that the structures "are not all one building" and that "there are separate footings [and] separate roofs." Regarding the dimensions of the warehouse, the court found that the testimony on behalf of plaintiff was incredible and the testimony on behalf of defendant was "very credible." We do not question the court's finding that defendant's method of measurement of the warehouse was more accurate and therefore was less than 8,000 square feet in area.

The trial court then observed that the first complaint (CC 725-530) charged defendant with violating chapter 4, section 402.8, which is "a housekeeping section saying that this section belongs with 402" and "charges the defendant with violating absolutely nothing." The problem, according to the trial court, is that defendant was never charged with section 402. Due to the erroneous statutory citation, the trial court opined that the case should have been subject to a motion to dismiss prior to trial or at the close of plaintiff's case. No such motion, however, was made.

■ On appeal, plaintiff asserts that the trial court's decision is against the manifest weight of the evidence and ignores the purpose and intent of the Code. Plaintiff argues that the three structures constitute one building because: (1) the facility was built under one building permit; (2) the three structures were constructed concurrently; (3) the walls which adjoin the office to the garage and the garage to the warehouse are reasonably considered to be the interior walls of the garage even though these walls abut the exterior walls of the office and the warehouse (*i.e.*, the exterior wall of the office and the exterior wall of the warehouse also serve as the interior end

walls for the garage); and (4) the garage area is an extension of the other two structures (the warehouse and office) much like a garage attached to a home.

Plaintiff also argues that the trial court's decision destroys the purpose and intent of the Code, which are to protect life and property from destruction by fire because (1) the combustible roof of the garage abuts the combustible roof of the warehouse and thus if a fire starts in either portion, it will spread to the other portion, and (2) no true fire wall exists between the warehouse and the garage or between the garage and the office.

Defendant contends that the evidence amply supports the trial court's finding that the office and the warehouse are separate buildings because (1) each structure has separate walls; (2) no party walls are present; (3) air space exists between the walls of each building; and (4) each building was constructed with separate footings. Defendant makes no mention of the garage and no attempt to discuss the purpose and intent of the Code.

Although the parties present this issue solely as a question of fact, we view this case as a mixed question of law and fact since the Code provides guidelines for determining the area considered inside a single building. (See *Bloomquist v. Ely* (1993), 247 Ill. App. 3d 656, 667-68, 617 N.E.2d 474 (whether a certain device constitutes an implement of husbandry as defined by statute raises a mixed question of law and fact).) When presented with a mixed question of law and fact, we must defer to the trial court on the actual findings of fact unless against the manifest weight of the evidence and must engage in our own independent analysis to resolve questions of law relating to the application of the facts to the legal construction of the written instrument, which in the present case is a local ordinance. (See *Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142-43, 482 N.E.2d 1085 (addressed the construction of a charitable testamentary trust as a mixed question of law and fact).) We have given due deference to the trial court's factual findings but provide a different interpretation to the application of those facts as they relate to the Code.

According to the Code's definition, "[t]he area included within the surrounding exterior walls of a building shall include *** all enclosed extensions." Nastav specifically testified "[w]e built the warehouse, built the office, and then put two walls up," referring to the garage. Nastav's testimony further reveals that the two exterior garage walls abut one warehouse wall and an interior passage joins the warehouse to the garage. The testimony and exhibits clearly establish that an exterior wall of the garage is an extension of an

exterior wall of the warehouse. The exterior wall is, in fact, one wall. From this evidence, the garage is, at the very least, an enclosed extension of the warehouse.

Furthermore, according to the Code, a fire wall operates as an interior wall included within a single architectural structure. Lia, on behalf of plaintiff, testified that no true fire wall exists on defendant's facility. Defendant, on the other hand, attempted to establish that part of the wall which stands between the warehouse and the garage became a fire wall, but then conceded that there is no double wall between the warehouse and the garage so that the garage could be considered a completely separate structure. Even assuming a fire wall existed, contrary to Lia's testimony and defendant's concession, the Code specifically provides that a fire wall does not act as a divider. Thus defendant's attempt to identify the wall between the warehouse and garage as a fire wall is ineffective for purposes of determining whether the two structures are separate or combined.

Defendant's remaining arguments are equally unconvincing. The lack of party walls does not transform an extension into a separate building. Footings are merely foundations and offer no aid in determining the separation or extension of a structure. The air space which exists between the wall of the garage and the wall of the warehouse cannot be viewed as separating buildings for purposes of the Code.

For all the above reasons, we find that the evidence does not, in any way, support the conclusion that the structures are separate buildings. Accordingly, we reverse the trial court's findings.

■ Next defendant asserts that the ordinance requiring installation of a sprinkler system in buildings of more than 8,000 square feet is void because plaintiff had no power to enact it. Defendant relies on *Glenview Rural Fire Protection District v. Raymond* (1974), 19 Ill. App. 3d 272, 311 N.E.2d 302, where this court held that the plaintiff district's ordinance requiring installation of sprinkler systems in some apartment buildings was void for lack of statutory authority in section 11 of the act creating fire protection districts (Ill. Rev. Stat. 1971, ch. 127½, par. 31 (now 70 ILCS 705/11 (West 1992) and now cited as the Fire Protection District Act (70 ILCS 705/0.01 (West 1992)))). Defendant acknowledges that the validity of the ordinance was not raised in the trial court but believes that this issue is properly before this court because a trial court's judgment may be affirmed on any grounds supported by the record.

Even if we ignored the waiver issue, on the merits, the *Glenview* case does not apply since it was decided in 1974 and subsequently in 1977 the relevant statute was amended to provide fire districts with

the "power to adopt and enforce fire prevention codes and standards parallel to national standards." (Ill. Rev. Stat. 1977, ch. 127¹/₂, par. 31.) Amendments are generally presumed to change the law as it formerly existed. *Hession v. Illinois Department of Public Aid* (1989), 129 Ill. 2d 535, 543, 544 N.E.2d 751; *New Yorker Magazine, Inc. v. Department of Revenue* (1989), 187 Ill. App. 3d 931, 941, 543 N.E.2d 957; *Sanchez v. Access Associates* (1989), 179 Ill. App. 3d 961, 966, 535 N.E.2d 27; *Wilkes v. Deerfield-Bannockburn Fire Protection District* (1979), 80 Ill. App. 3d 327, 333-34, 399 N.E.2d 617.

■ Finally, defendant asserts that plaintiff did not properly charge defendant with violating any ordinance because the statutory citation written on the first complaint only referred to a definitional section of the Code.

This issue concerns the first complaint (CC 725-530), which stated that defendant committed an offense under chapter 4, section 402.8. Chapter 4 of the Code provides in relevant part:

> "F-402.1 Where Required: Fire suppression systems shall be installed and maintained in full operating condition, as specified in this Code, in the following locations indicated in Section F-402.2 through F-402.18.

> * * *

> F-402.8 Use Groups A-3, A-4, B, F, M, R-1, S-1 and S-2: In all buildings or structures of Use Groups A-3, A-4, B, F, M, R-1, S-1 and S-2 when more than 8,000 square feet in total area."

Although the first complaint cited section 402.8 and the more exact citation would be section 402.1, the first complaint, on its face, recited the charge as "failure to install a sprinkler system and supply an adequate supply of water."

The second complaint (CC 725-531) charged defendant with violating chapter 2, section 2—1, which provides:

> "Every automatic sprinkler system shall have at least one adequate water supply."

The second complaint expressly stated that defendant violated this section because defendant had "no sprinkler system and no water supply."

A complaint for a municipal ordinance violation sufficiently states a cause of action where it adequately informs the defendant of the nature of the offense. (*City of Chicago v. Brown* (1978), 61 Ill. App. 3d 266, 272, 377 N.E.2d 1031; *Village of Park Forest v. Nicklas* (1968), 103 Ill. App. 2d 99, 102, 243 N.E.2d 421.) Pleadings in municipal ordinance cases need not be drawn with the precision of a criminal indictment or information. (*Brown*, 61 Ill. App. 3d at 272.) Moreover, if a defendant feels inadequately informed of the charge, his remedy

would be to file a motion for more specific statements of the charges. *Brown*, 61 Ill. App. 3d at 272.

Defendant's attempt on appeal to challenge the statutory basis of the charges is tardy, at best, and meritless since (1) both complaints precisely announced the violations for which defendant was being held accountable; (2) defendant knew for years about plaintiff's position that a sprinkler system should be installed in defendant's facility (at least from the time of the May 1988 agreement until the complaints were issued in 1992); and (3) defendant presented its case on the merits at trial.

Reversed.

TULLY, P.J., and CERDA, J., concur.