## The People, ex rel. James M. Mahoney, State's Attorney, v. Decatur, Springfield & St. Louis Railway Company, et al.

1. COLLUSIVE SUIT—*what does not establish.* The fact that the state's attorney institutes a proceeding for injunction in the name of the people at the instigation of property owners, and accepts from them the aid of special counsel, does not establish that the proceeding is collusive, where it appears that such state's attorney received no compensation or promise of compensation for his services.

2. FRONTAGE CONSENTS—*right to withdraw.* Property owners signing frontage consents, authorizing the construction of a railroad in front of and along their property, may withdraw the same at any time before finally acted upon by the mayor.

3. FRONTAGE CONSENTS—*effect of absence of, upon ordinance.* Where the obtaining of frontage consents from private property owners is essential to the passage of an ordinance, the absence of such consents will render the ordinance void.

4. STREETS—*when state's attorney may maintain injunction proceedings to restrain unlawful use of.* The state's attorney of a county is empowered to institute and maintain proceedings to enjoin the unlawful and unauthorized use of a public street by a traction company.

5. LACHES—*when doctrine of, does not apply.* The doctrine of laches has no application to and will not apply against a cause brought in behalf of and in the interests of the people.

· Bill in chancery. Appeal from the Circuit Court of Macoupin County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1904. Reversed and remanded. Opinion filed April 20, 1905.

JAMES M. MAHONEY, State's Attorney, and BELL & BURTON, for appellant.

W. E. P. ANDERSON and RINAKER & RINAKER, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an information or bill in chancery, in the name of the People of the State of Illinois, filed by James M. Mahoney, state's attorney of Macoupin county, praying that appellees may be perpetually enjoined from entering upon any portion of West street in Carlinville, a city incorporated under the general incorporation law of Illinois, for the purpose of constructing a railroad, and from constructing such railroad in or upon said street. Upon a hearing upon the merits, the Circuit Court entered a decree dismissing the bill for want of equity, from which the complainant appeals.

Appellees were engaged in building an electric railroad from the city of Springfield to and through the city of Carlinville, and desired to obtain the right to lay down railroad tracks in and upon West street, in said city of Carlinville.

Pursuant to the statute enumerating the powers of city councils, which provides that a city council shall have no power to grant the use of, or the right to, lay down any railroad tracks, in any street of the city, to any railroad company, except upon the petition of the owners of the land representing more than one-half of the frontage of the street, or so much thereof as is sought to be used for railroad purposes (Rev. Stat. 1903), certain persons professing to own property having a frontage of 8,200.5 feet upon said West street (the total frontage upon said street being 13,364.84 feet) on July 30, 1903, filed with the city

clerk of said city a petition asking the city council to adopt an ordinance granting such right to appellees. On August 17, 1903, a number of those who had signed such original petition, and who represented 1,716 feet of frontage, filed with the city clerk an instrument in writing, which was on the same day presented and read to a meeting of the city council, by which they sought to withdraw their signatures from the original petition, and protesting that by reason of such withdrawal there remained no petition signed by more than one-half of the frontage of said street as required by law and therefore the council had no legal power to pass an ordinance granting such privilege. On August 21, 1903, an ordinance was duly passed by the city council authorizing appellees to construct, maintain and operate an electric railway on said West street.·

It is first contended by appellees that the bill was properly dismissed for the reason that it appears that the proceeding is not *bona fide* for the purpose of protecting a public right shown to be threatened, but was in fact instituted to protect private owners of abutting property from a threatened injury to their property for which there is a complete remedy at law.

In support of such contention affidavits were presented and filed upon the hearing, to the effect that the bill of information is contained in a wrapper indorsed with the names of the attorneys who are assisting the state's attorney in the case; that the interlineations therein and indorsements thereon are in the handwriting of one of such attorneys, and further that the state's attorney had theretofore stated that the bill was filed in his name because the property owners had been advised by their attorneys that they could not obtain an injunction in any way and that they had for that reason gotten him to file the bill in his own name.

Affidavits filed by appellant show that the information was prepared and filed conjointly by the state's attorney and counsel for certain property owners who were, at the request of the state's attorney, assisting him in the suit,

and that the state's attorney was impelled to act in the matter through the solicitation and importunity of different property holders upon West street and elsewhere in the city. We are unable to perceive how the actions of the state's attorney can be impugned because he was thus moved to act, or that there was any impropriety in his accepting the assistance of private counsel, who were acting also for certain property owners. Any citizen has a right to call upon the state's attorney to redress a public wrong. The fact that private rights may also be involved and that through the acts of the state's attorney in the interests of the public, private wrongs, as well, may directly or indirectly be redressed, is immaterial. There was no impropriety in the action of the state's attorney in requesting and accepting the assistance of such other counsel. Moreover it appears from the affidavit of the assistant state's attorney, made in the absence of his chief from the State, that the information was filed by the state's attorney of his own motion as the representative of the public; that he has not received and does not expect to receive any compensation whatever for his acts or services in the matter. In the case of People v. G. E. Ry. Co., 172 Ill. 129, cited by counsel for appellees, the court dismissed a similar proceeding to this for the reason that it clearly appeared from the evidence that the people were not in fact parties, that, on the contrary, the suit was instituted and prosecuted by the attorney-general at the sole instigation of a rival corporation by which he was employed and paid for his services. Nothing of the kind appears in the case at bar, and we, therefore, hold the contention in question to be unfounded and without merit.

It is further contended by appellees in support of the decree that the parties who signed the original petition asking the city council to grant the privileges sought by appellees could not afterward, and before the adoption of an ordinance, withdraw their signatures from such petition, and revoke such authority as said signatures thereto had given the council.

In the case of Theurer v. The People, 211 Ill. 296, the sufficiency of an application for a license to keep a dram-shop was involved. By an ordinance of the village of Hyde Park, it was necessary that a majority of the property owners within a certain prescribed territory should sign the application for such a license before the same could be granted by the mayor of the city of Chicago, to which the village had been annexed. The application there under consideration was, among others, signed by one Alister, who represented a certain number of feet frontage. It was presented to the mayor on May 29th. On June 22nd, and while the matter was under consideration and the signatures to the application were being verified, the mayor consented that the dram-shop might be opened, subject however, to the revocation of such provisional consent, if evidence should meanwhile be produced, sufficient under the law, in the judgment of the mayor, to invalidate the application. On July 22nd, following, Alister withdrew his name from the application, the effect of which was to leave the application unsupported by the requisite amount of frontage. Whereupon the mayor refused to grant the license. It was insisted by counsel for the applicant seeking the license, that the act of signing the application was an irrevocable act. The court held that Alister had a right to withdraw his consent at any time before the mayor had finally acted. See also, Kinsloe v. Pogue, 213 Ill. 302.

We are of opinion that the reasoning adopted and the conclusions reached by the court in the Theurer case and the cases there cited, and the rule thereby established, are applicable to the case at bar and are decisive of the question under consideration. That upon the withdrawal by property owners representing 1,716 feet of frontage, of their signatures to the application, there remained no such petition as is required by statute. Consequently the city council were without legal power or authority thereafter to adopt the ordinance in question and such ordinance was void and without legal force or effect.

Appellees further contend that inasmuch as the legisla-

ture has committed to the city of Carlinville, and other like municipalities, its sovereignty in respect to streets, highways and public grounds within its limits, the city of Carlinville is invested with the authority of the State in this respect and is the proper, if not the only party to maintain a bill in equity to restrain obstructions of streets within its limits; that it may, or may not, in its discretion, question appellees' right of occupancy of West street; and further that the city having decided not to act, abutting owners can recover at law and have no other remedy.

In answer to this contention it is sufficient to reiterate that this proceeding is not by abutting property owners, but is, brought by the representative of the public, in their interest and behalf.    In Doane v. Lake St. El. R. Co., 165 Ill. 510, it is said where the use of a street has not been legally authorized, an information in chancery by the attorney-general or state's attorney on behalf of the People or a bill for injunction by the city, affords a proper and complete remedy.    There is nothing in the authorities cited by counsel inconsistent with the view that a bill may be filed by either the city, the attorney-general or the state's attorney, or that the state's attorney may act regardless of whether the city may or may not think proper to do so.    In the case under consideration, the city council has acted without legal authority or power.    The theory that unless such city council chooses to stultify itself by authorizing proceedings to attach and defeat the result of such illegal action on its part the public is without remedy in the premises, is without support of reason or authority and clearly untenable.

It is finally insisted that the abutting and other property owners upon whose motion the state's attorney acted, have been guilty of such laches in denying the filing of the bill for five months, while the railroad company was acquiring and grading its right of way, and in failing to urge the application for an injunction for six months further while the company was completing its tracks up West street; that no such drastic relief as asked should be now allowed, but that

they should be remitted to their action at law. The proceeding being in behalf of, and in the interests of the People, the doctrine of laches is not applicable.

" The attorney-general and the state's attorney may file an information on behalf of the People where the interests of the public are involved and lapse of time constitutes no bar to such proceeding. The doctrine of estoppel does not apply to a matter in the nature of a public right, and the State is not embraced within the Statute of Limitations unless specially named, and, by analogy, does not fall within the doctrine of estoppel." The People v. Burns, 212 Ill. 227.

The decree of the Circuit Court will be reversed and the cause remanded with directions to proceed in conformity with the views herein expressed.

*Reversed and remanded.*