RICHARD L. WILKES *et al.*, Plaintiffs-Appellants, *v.* DEERFIELD-BANNOCKBURN FIRE PROTECTION DISTRICT *et al.*, Defendants-Appellees.

Second District   No. 78-454

Opinion filed December 12, 1979.—Rehearing denied February 11, 1980.

Richard J. Smith, of Sullivan, Smith and Hauser, Ltd., of Waukegan, for appellants.

Ellis E. Fuqua and Douglas W. Stiles, both of Fuqua, Winter & Associates, Ltd., of Waukegan, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, Richard L. Wilkes and Jack G. Keyes, who are firemen employed by the Deerfield-Bannockburn Fire Protection District, commenced this action in the Circuit Court of Lake County against defendants Earle S. Rappaport, Jr., Obert B. Fladeland and Ethel M. Beauregard, who are the members of the board of trustees of the district, and Jack Gagne, its fire chief; these parties are also the trustees of the district firemen's pension fund. Insofar as is relevant to this appeal, plaintiffs sought to require defendants to pay into the firemen's pension fund the unpaid salaries of firemen which accrued during temporary, disciplinary suspensions as constituting a fine or penalty within the terms

of section 4—119 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 4—119). Subsequently, an additional count was added to the complaint in which a determination was sought that the trustees of the fire-protection district illegally maintain and operate an ambulance service without authority for such service having first been approved by referendum pursuant to section 22 of "An Act in relation to fire protection districts" (Ill. Rev. Stat. 1977, ch. 127½, par. 38.5) (hereinafter cited as the Act).

After hearings, the trial court found that salaries withheld for disciplinary reasons do not constitute "fines or penalties" within the meaning of the statute and, further, that defendants were properly operating an ambulance or rescue service pursuant to the authority of section 11 of the Act (Ill. Rev. Stat. 1977, ch. 127½, par. 31) and the board of trustees was not required to conduct the referendum provided for in section 22 of the Act. Plaintiffs appeal from the judgment entered pursuant to these findings.

We consider first whether compensation withheld from a fireman during a period of disciplinary suspension from duty must be paid into the pension fund. We conclude it does not and affirm the order of the trial court in that regard.

Section 4—119 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 4—119) provides as follows:

"Donations. All rewards and moneys, fees, gifts and emoluments that may be paid or given for or on account of extraordinary services by the fire department, or any member thereof (except when allowed to be retained by competitive awards), shall be paid into the pension fund.

The Board may take by gift, grant, transfer, devise or bequest, any money, real estate or personal property of any description; and such money, real estate or personal property so obtained and also *all fines and penalties imposed upon firemen*, shall be paid into the pension fund. All moneys raised under Section 4—118 of this Article shall in like manner be paid into the pension fund, and treated as part thereof." (Emphasis added.)

■■ While what may constitute a fine or penalty in the context of section 4—119 has not been considered by a reviewing court, these terms have commonly accepted meanings and have been consistently applied. A fine is generally defined as a pecuniary punishment or sum of money exacted from a person guilty of an offense. (*People ex rel. Mayfield v. City of Springfield* (1959), 16 Ill. 2d 609, 613, 158 N.E.2d 582, 585; *Sawyer v. Barbour* (1956), 142 Cal. App. 2d 827, 835, 300 P.2d 187, 191; *State v. Addington* (1907), 143 N.C. 683, 686, 57 S.E. 398, 399.) The word penalty, on the other hand, is considered to be broader in scope and to include

fines, forfeitures and other forms of punishment. (*McHugh v. Placid Oil Co.* (1944), 206 La. 511, 530-31, 19 So. 2d 221, 227; *State ex rel. Jones v. Howe Scale Co.* (1914), 182 Mo. App. 658, 663, 166 S.W. 328, 330.) In the context of section 4—119, however, it is apparent the legislature used the terms synonymously. It is concerned only with the disposition of money or property given or paid to the fire department or its members, and provides it should then be paid over to the pension fund. The fireman in this case, while suspended, received no salary nor was he required to pay a fine or penalty to the district. He was not permitted to work for the specified period and understandably was not then paid for that period. Presumably, the district might find it necessary to employ someone else to replace a suspended fireman and, if the construction urged by plaintiff is followed, that would require the district to then pay two salaries each time it sought to discipline a fireman by suspension, *i.e.*, one to his replacement and one to the pension fund. We conclude that the legislature did not intend that salaries withheld from firemen for disciplinary reasons should be paid into the firemen's pension fund. See *People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447; *Community Consolidated School District No. 210 v. Mini* (1973), 55 Ill. 2d 382, 304 N.E.2d 75, *appeal dismissed* (1974), 416 U.S. 923, 40 L. Ed. 2d 279, 94 S. Ct. 1921.

Plaintiffs also contend that fire-protection districts have no authority to operate an ambulance service without first receiving approval by referendum pursuant to section 22 of the Act. Defendants respond that fire-protection districts are also authorized to provide the ambulance and rescue services to which plaintiffs object pursuant to section 11 of the Act and that compliance with section 22 is necessary only if a levy of the special tax therein provided is to be made to finance the service.

Section 11 of the Act, upon which defendant relies for its authority to provide the service in question, in relevant part, states as follows:

> "The board of trustees of any fire protection district incorporated under this Act has the power and it is its legal duty and obligation to provide as nearly adequate protection from fire for all persons and property within the said district as possible and to prescribe necessary regulations for the prevention and control of fire therein. *Consistent with this duty, the board of trustees may provide and maintain life saving and rescue equipment, services and facilities.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 127½, par. 31.

Section 22 of the Act, which plaintiff asserts requires referendum approval by the voters of the district before defendant may furnish the ambulance service in issue, provides, in relevant part, as follows:

> "The Board of Trustees of any fire protection district incorporated under this Act is authorized *under the terms and*

*conditions hereinafter set out,* to provide emergency ambulance service to or from points within or without the district; to contract with providers of ambulance service; to combine with other units of governments for the purpose of providing ambulance service; to levy a tax for the provision of such service and to adopt rules and regulations relating to ambulance service within their jurisdiction.

(a) It is declared as a matter of public policy:

(1) That, in order to preserve, protect and promote the public health, safety and general welfare, adequate and continuing emergency ambulance service should be available to every citizen of Illinois;

(2) That, insofar as it is economically feasible, emergency ambulance service should be provided by private enterprise; and

(3) That, in the event adequate and continuing emergency ambulance services do not exist, fire protection districts should be authorized to provide, and shall cause to be provided, ambulance service as a public responsibility.

(b) *Whenever the Board of Trustees of a fire protection district desires to provide an ambulance service, they shall order an election to be held in such district upon such question.* The notice of election shall state it is called for the purpose of authorizing the Board of Trustees of the fire protection district to provide an ambulance service and to levy a special tax, not exceeding .30% of the value of all taxable property within the district * * *. * * *

(c) If it appears that a majority of all valid votes cast at the election are in favor of the provision of such ambulance service and levying of a special tax to pay for the same, the Board of Trustees may:

1. Provide or operate an ambulance service;
* * *

6. Levy and collect an annual tax for the purpose of providing ambulance service under this Act * * * in addition to the other taxes a fire protection district may levy for its corporate purposes." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 127½, par. 38.5.

As the parties cannot agree upon a characterization of the disputed services being provided by the fire-protection district, they will be described as may be necessary for resolution of the issue presented.

The Deerfield-Bannockburn Fire Protection District has been engaged in an ambulance or rescue type service for many years. It first acquired ambulances in the 1950s and 1960s and in 1974 purchased the two ambulance vehicles now being used for that purpose and which it

describes as mobile intensive care units. In addition, the district also operates a fire-rescue vehicle which is not equipped for the transport of injured persons, but carries fire fighting, salvage, extrication and forceable entry equipment as well as first aid and other rescue materials. The ambulances carrying lifesaving equipment including drugs, defibrillator, telemetry equipment, encephalogram machine, splints, bandages and similar first aid materials and are in direct radio contact with the emergency room of the hospital to which they transport sick and injured persons. These units and the men operating them respond to accidents of all kinds including automobile, home and work-related injuries, as well as illnesses such as heart attacks, strokes, poisoning, burnings and asphyxiation. They are also called upon in the event of a suicide or other death. The ambulance and rescue equipment is manned by the 18 firemen-paramedics who constitute the members of the fire department; 13 of these men are full-time paid firemen and 5 are employed on a part-time basis in that capacity. The district conducts both its fire protection and ambulance services out of a single station located in Deerfield.

The ambulance units are primarily used for the care and transport of emergency cases to the Highland Park Hospital, which is not within the corporate limits of the fire-protection district, but is apparently the closest hospital and is located about four miles from the district. On occasion they also transport patients to other places. Approximately 600 ambulance runs are made by the department each year for ambulance and medical care purposes, as compared to approximately 300 annual fire call runs made by these men in their capacity as firemen with the district firefighting equipment. The evidence further disclosed that the fire district has entered into mutual-aid agreements with other communities outside of its corporate boundaries located in Lake and Cook Counties which require the dispatch of the ambulance and fire vehicles when called for under the terms of the agreements. Of the approximate 600 medical emergency calls to which the ambulance units respond in a given year, less than 10% relate to fire or smoke inhalation situations or other injuries occasioned by fire.

No charge is made by the fire district to those persons treated or transported to the hospital by the ambulance units; in the area covered by this service there are also private ambulances which transport sick and injured persons.

In the regular operation of the fire department six firemen-paramedics are normally on duty for each shift when it is fully manned. When an ambulance call, as differentiated from a fire call, is received, three of the men respond with an ambulance. As a fire engine must be manned with a minimum of four men when responding to a fire call, as

sometimes occurs while an ambulance call is being answered, then off-duty personnel of the fire department are called in to make the fire run. These men are paid on a per-call basis for this extra duty at the rate of $6 to $8 per hour.

Much of the equipment used in carrying out the ambulance service described herein has been provided by public subscription at no cost to the fire district. It is not clear from the record, however, what proportion of the firemen's salaries and other expenditures made by the fire district arise solely by reason of the ambulance service. The statements of receipts and disbursements of the fire protection district for the years 1974 through 1977 show an average annual income from all sources to the district of approximately $692,750, with average annual expenditures during that period of $572,000. Average income received by the district from taxes levied for corporate purposes was $550,250 for these same years. Salaries of the firemen-paramedics are by far the largest single expenditure made by the fire district and average $319,500 each year.

The trial court found that section 22 of the Act provides for a type of ambulance service which is to be distinguished from the more limited lifesaving services authorized under section 11, but concluded that section 22 was essentially a revenue increasing statute and that the district was validly operating its ambulance service within the provisions of section 11.

In considering this issue we note first that fire protection districts are fundamentally created "in order that they may engage in the acquisition, establishment, maintenance and operation of fire stations, facilities, vehicles, apparatus and equipment for the prevention and control of fire * * *, and provide as nearly adequate protection from fire for lives and property within the districts as possible * * *." (Ill. Rev. Stat. 1977, ch. 127½, par. 21.) It must also be noted that a fire protection district has only those powers expressly granted to it by the legislature and possesses no inherent powers. *Glenview Rural Fire Protection District v. Raymond* (1974), 19 Ill. App. 3d 272, 274, 311 N.E.2d 302, 304.

To supplement the announced purpose of fire districts to protect lives and property from fire, the legislature in 1955 further authorized them by an amendment to section 11 of the Act to provide for such lifesaving and rescue equipment, services and facilities as may be consistent with their primary duty to afford protection from fire. Again, by amendment of the Act in 1971, the legislature expanded the authority of fire districts by the addition of section 22 to permit operation of a general ambulance service if first approved by the voters of the district.

■■ The trial court correctly recognized there is a difference in scope of the services authorized by these two amendments. In view of the presumption that provisions added by amendment were not included in

the original act (*People ex rel. Scott v. Cardet International, Inc.* (1974), 24 Ill. App. 3d 740, 321 N.E.2d 386), as specific authority for a fire district to provide emergency ambulance services is granted by the legislature in section 22 by its 1971 amendment to the Act, it must be presumed that such authority did not reside in section 11 pursuant to its 1955 amendment.

■■ Defendants have not conducted an election for voter approval to act under the authority of section 22 and must here rely solely upon section 11. It seems apparent the legislature intended by this section to authorize only those lifesaving and rescue operations which might arise in connection with the fire-protection duties of a district, as it mandated that these new powers be carried out in a manner which is consistent with that primary function. It has been held that "consistent with" means in harmony with. (*Shay v. Roth* (1923), 64 Cal. App. 314, 318, 221 P. 967, 969.) Here, however, the ambulance and life-saving services offered by the district substantially surpass its fire-related services; two-thirds of the financial, equipment and man-power resources of the district are now directed towards its emergency ambulance service and only one-third towards its fire-protection duty. While we do not intend to depreciate the value of the ambulance-paramedic service to those to whom it is made available, it appears that the application of the resources of the district is not now consistent with its primary duty to protect from fire.

■■ Defendant's further argument that it is in full compliance with section 22 as a referendum on the question of an ambulance service is required only if the special tax provided by it is necessary to fund those services is not persuasive. Section 22(b) directs an election be held "[w]henever the Board of Trustees of a fire protection district desires to provide an ambulance service * * *" and the question submitted to the voters in that event is whether the district will be authorized to provide an ambulance service *and* levy a special tax to fund it. If, as urged by defendant, the only essential question presented to the voters by that statute is whether the district shall have the additional taxing power for ambulance-service purposes, that could have been very simply provided for by the legislature by directing the submission of that question only. (*Cf.*, Ill. Rev. Stat. 1977, ch. 127½, par. 34.) We conclude that the provisions of section 22 must be complied with before the trustees may provide the emergency ambulance service authorized therein.

We do not by this determination suggest that trained paramedics and lifesaving equipment such as are described in this case cannot properly be used in carrying out the powers granted under section 11. The general ambulance service which has become the major activity of this fire-protection district, however, must either be curtailed to conform to the

authority now existing in the board of trustees or sanctioned by the approval of the voters pursuant to section 22.

For these reasons we affirm the judgment of the trial court insofar as it relates to the pension fund, and we reverse its judgment in all other respects and remand for such further proceedings as may be necessary in this case.

Affirmed in part and reversed and remanded in part.

GUILD, P. J., and SEIDENFELD, J., concur.