THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Plaintiffs-Appellees, v. PEGGY KIRKPATRICK, Defendant-Appellant.

First District (1st Division)   No. 1—91—4010

Opinion filed December 21, 1992.

George E. Panos, of Palos Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Joelle Marasco, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Peggy Kirkpatrick appeals an order of the circuit court of Cook County denying defendant's request that her bail bond deposit be refunded to her attorneys. The trial court ruled plaintiff Hazel Dreifholdt, the aunt of defendant's ex-husband, plaintiff Rodger Kirkpatrick, had a superior interest in the funds, and ordered the funds be paid to Hazel. For the following reasons, we affirm.

The record on appeal indicates the following facts. Defendant was charged by indictment with one count of attempted first degree murder, one count of conspiracy to commit murder, two counts of armed violence and three counts of aggravated battery. Bond was set at $250,000. On July 24, 1990, pursuant to section 110—7 of the Code of Criminal Procedure (Ill. Rev. Stat. 1989, ch. 38, par. 110—7), defendant posted 10% of the bond amount—$25,000—and was issued a receipt by the clerk of court. On July 8, 1991, defendant pleaded guilty to three counts of aggravated battery; the State nol-prossed the remaining counts. At hearings on the plea, the parties stipulated to facts indicating that a codefendant shot Rodger Kirkpatrick on behalf of defendant and that defendant aided the shooting. Defendant was sentenced to two years' imprisonment, followed by one year of mandatory supervised release. In addition, costs and fines totalling $4,000 were to be deducted from the bond.

At the sentencing hearing, one of defendant's attorneys moved for leave to file a petition for a cash bond refund (CBR) to the attorney of record. The trial court noted that no one appeared as a surety on the bond deposit slip. Over the State's objection, the trial court allowed the motion and stated that any objections should be filed by July 22, 1991.

The case was continued to August 13, 1991, when defendant moved in limine to bar testimony from anyone seeking to assert an interest in the bond refund for lack of standing. The motion was denied, and the trial court heard evidence on the CBR petition. Defendant's motion to reconsider the ruling on her motion in limine was denied on August 29, 1991. The trial court allowed time for further motions to be heard the following month.

On September 26, 1991, defendant moved to transfer the hearing on the CBR petition to a pending chancery action concerning the

same subject matter. The court set the motion for argument on November 12, 1991. Yet on November 12, 1991, the trial judge recused himself and transferred the case to the presiding judge for reassignment. Following a hearing before the presiding judge on November 13, 1991, the case was transferred back to the trial judge to state reasons for the recusal and to reconsider the ruling. Later that day, the trial judge stated that the reason for the recusal was that he knew a newly added defense attorney from a bar association function and wanted the parties to know of this relationship. Over defendant's objection, the trial judge revested himself with jurisdiction over the matter. Defendant moved to vacate the order revoking the recusal.

The motion to vacate was denied at a hearing held on December 18, 1991. At this hearing, the court stated that it had heard the evidence relating to the CBR petition. The court stated that defendant's husband Rodger raised $20,000 of the $25,000 deposit from his aunt, Hazel Dreifholdt, who lives in another State. Rodger then deposited the money in his account and had a certified check for $25,000 made out to the clerk of court. The court found there was no indication of a surety on the bond deposit slip. The court nevertheless found that the evidence, including a letter defendant wrote Hazel thanking her for the money, established that the money came from Hazel. The court also took note of a divorce settlement between defendant and Rodger which provided that the bond money belonged to Hazel. The court stated that defendant subsequently hired the attorney to whom the CBR petition relates. The court concluded that Hazel had a superior interest in the funds and that the money would go to her, rather than to the defense attorney. Defendant timely filed a notice of appeal. On April 10, 1992, this court, over defendant's objection, added Rodger and Hazel as parties, pursuant to Illinois Supreme Court Rule 366(a)(2) (134 Ill. 2d R. 366(a)(2).).

I

■ Initially, defendant contends that the bail statute creates a conclusive presumption that the funds belong to her. (See *People v. Markovich* (1990), 195 Ill. App. 3d 999, 552 N.E.2d 1232.) Although *Markovich* suggests that such a presumption exists for the purpose of paying costs and fines, it does not exist for the purpose of paying legal fees. (See, *e.g., People v. Dorsey* (1982), 109 Ill. App. 3d 218, 225-26, 440 N.E.2d 394, 399-400.) Indeed, the *Dorsey* court concluded that the trial court could prevent a defendant from using a cash bond deposit where the funds were the subject of dissolution proceedings. The record here indicates that the trial court considered a divorce settle-

ment agreement between Rodger and defendant indicating that the bond funds belonged to Hazel. Thus, the presumption, if any, that the funds belong to defendant may be rebutted.

## II

■ In this context, we turn to defendant's argument that the trial court deprived her of property without due process of law by: (1) failing to add Rodger or Hazel or both as necessary and indispensable parties; and (2) denying her motion *in limine* to bar testimony from anyone asserting an interest in the bond funds because such persons had no standing and had filed no pleadings in the case. As to the first claimed error, this court has rejected similar claims where the record clearly indicates that defendant received due process of law. (See *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, 1069-70, 493 N.E.2d 1175, 1181.) It is apparent from the record that defendant appeared and defended her claim on the CBR, and thereby received due process of law. The motion *in limine* itself sought to bar references to "Any involvement by anyone's 'aunt,' " which indicates that defendant had notice of the objections which were in fact raised in this case. As to the second claimed error, defendant has provided no authority that a witness must have standing or must have filed pleadings as a prerequisite to such testimony being admissible. Thus, defendant's arguments are unpersuasive.

## III

■ Defendant contends that it was improper for the State to object to the CBR petition. Defendant relies on cases holding that the State's Attorney may not be interested in a civil case which may also be the basis of a criminal case, in order to prevent personal interest from influencing a prosecution. *People v. Kidd* (1948), 401 Ill. 230, 237, 81 N.E.2d 892, 895; *People ex rel. Hutchison v. Hickman* (1920), 294 Ill. 471, 476; *People ex rel. Carey v. Lincoln Towing Service* (1976), 40 Ill. App. 3d 126, 130-32, 351 N.E.2d 342, 347-48; *In re Guardianship of Angell* (1960), 26 Ill. App. 2d 239, 243, 167 N.E.2d 711, 713; see Ill. Rev. Stat. 1989, ch. 34, par. 3—9009.

Defendant has failed to show that the State's Attorney had any personal pecuniary interest in the outcome of the CBR petition or that the facts surrounding the funds formed or could form the basis of any criminal case. The record indicates that costs and fines were deducted from the bond funds before the CBR petition was filed. We conclude that the State's Attorney acted only to see that justice was done. (See *Angell*, 26 Ill. App. 2d at 243, 167 N.E.2d at 713.) Where

the State's Attorney does not appear to personally benefit from an action, the mere fact that such an action may protect the legal rights of one citizen against another does not render the State's Attorney's action improper. See *People ex rel. Mahoney v. Decatur, Springfield & St. Louis Ry. Co.* (1905), 120 Ill. App. 229.

## IV

■ Defendant argues that the trial judge erred when he reversed his decision to recuse himself. The record indicates that the trial judge's contact with a defense attorney, who entered an appearance after the trial court had heard evidence in this matter (and had ruled against defendant to do so), was limited to participation for two weeks in a bar association "Annual Christmas Spirit Show" over two years prior to the hearings at issue. The record indicates that the trial judge knew the defense attorney on a "hello and goodbye" basis only. The trial court's initial recusal was in error; such a tenuous "relationship" does not give rise to even an appearance of impropriety under the facts in this case, particularly where the attorney joins the case after the evidence is heard and all that remains is for the trial court to issue its ruling. Defendant asserts that it is immaterial whether the trial judge was mistaken in initially recusing himself, but offers no authority for that proposition. Thus, there was no error in reversing the recusal.

## V

■ Defendant argues that the trial court erred in ruling that Hazel was a surety, as the record is devoid of any assignment or suretyship agreement between Hazel and the defendant. However, as the appellant, defendant has the burden of showing error; any doubt arising from incompleteness of the record will be resolved against the appellant. (*E.g., Riopelle v. Northwest Community Hospital* (1990), 195 Ill. App. 3d 750, 755, 552 N.E.2d 1220, 1223.) Issues of sufficiency of the evidence cannot be reviewed without a report of proceedings. *Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 130, 468 N.E.2d 482, 485.

Defendant has failed to provide this court with the transcripts of proceedings for August 13 and 29, 1991. The record indicates that the evidence in this case was heard on August 13, 1991. Moreover, the trial court referred to a letter from defendant to Hazel regarding the bond funds; this letter appears to be missing from the record on appeal as well. Thus, this court presumes that the trial court heard evidence and testimony supporting its decision.

## VI

■■ Finally, defendant contends that the trial court lacks the statutory authority to direct that the CBR be paid to Hazel. This court has previously ruled that the bail statute gives the trial court the authority to prevent bond funds from being used as legal funds where an actual dispute over their ownership exists. (*Dorsey*, 109 Ill. App. 3d at 225-26, 440 N.E.2d at 399-400.) Consequently, the trial court acted within its discretion in this case.

For all of the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.