THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN P. MOMPIER, Defendant-Appellee.

First District (6th Division)  No. 1—94—0148

Opinion filed November 17, 1995.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Michael A. Hurst, Assistant Attorneys General, of counsel), for the People.

Robert W. Smith, of Hillside, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The police arrested the defendant, John Mompier, for possession of a controlled substance, and a third party posted bond for him. The Illinois Department of Revenue filed a lien against this bond deposit to secure a tax it claimed the defendant owed under the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 2151 *et seq.* (now 35 ILCS 520/1 *et seq.* (West 1992))) (Drug Tax Act). When the defendant failed to appear in court on the criminal charges, Judge Ronald Himel entered a judgment of bond forfeiture. Almost two years later, the defendant appeared before Judge Salone and pleaded guilty to the charges against him. Judge Salone ordered the clerk of the circuit court refund the bond deposit to the defendant's attorney, Robert Smith, but the clerk's office refused to refund the money because of the State tax lien. Consequently, Smith filed a motion for refund of bond notwithstanding notice of the State tax lien. Over the Illinois Attorney General's opposition, the judge granted Smith's motion. The Attorney General appeals this ruling.

The defendant was arrested on December 7, 1990, and charged with possession of a controlled substance with intent to deliver and unlawful use of a firearm by a felon. On December 11, 1990, an individual named Cecelia Accetturo posted $8,000 bond for the defendant. He was subsequently indicted.

On February 26, 1991, the Illinois Department of Revenue sent the defendant a "Notice of Tax Liability For Cannabis and Controlled Substance Tax Jeopardy Assessment under the Drug Tax Act." This assessment of $283,359.39 included $56,250 in tax, $225,000 "in penalty" and $2,109 in interest. On March 6, 1991, the Department of Revenue also sent the defendant a notice of lien for the same amount. The Department of Revenue sent both of these notices to the defendant's last known address. It appears that the Department of Revenue sent both notices by registered mail, but we cannot discern from the copies of the signed receipts in the record who signed for these pieces of mail. Also on March 6, 1991, the Department of Revenue filed a notice of State tax lien with the clerk of the circuit court, and, on March 7, 1991, it recorded the notice of lien with the Cook County recorder.

On October 15, 1991, the defendant failed to appear on the crimi-

nal charges. Smith informed Judge Himel that he had not had contact with the defendant for three or four weeks and that the defendant had failed to appear in another case the week before. The judge issued a warrant for the defendant's arrest, entered an order of bond forfeiture and set November 15, 1991, as the date for a judgment of bond forfeiture. The defendant failed to appear on or before that date, and the judge entered a judgment of bond forfeiture on November 15, 1991.

The defendant resurfaced and appeared in court on August 11, 1993, at which time Judge Salone reinstated his case. On October 6, 1993, he pleaded guilty to the charges. Judge Salone sentenced the defendant and asked him whether he wanted his bond refunded to his attorney as a portion of the attorney fees. The defendant agreed to this, and the judge entered an order directing the clerk to refund the bond to Smith. No one from the Attorney General's office was present at this hearing, but two assistant State's Attorneys were present. The assistant State's Attorneys remained silent during the discussion of the bond refund.

Sometime around the time of the sentencing hearing, the defendant signed a form entitled "Petition to Vacate Bond Forfeiture and Judgment." His signature was not notarized. In this petition, which stated that it was pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1992)), the defendant requested that the judge vacate the bond forfeiture judgment of November 15, 1991, because the "defendant was not given notice of the judgment as required by *** 735 ILCS 5/2—1302." The date written next to the judge's signature on the petition is October 6, 1993, but the petition was file stamped October 7, 1993. At a hearing in the case on December 20, 1993, the judge stated that it was his "vague recollection" that, on October 6, he had ordered a bond refund, and, the next day, Smith informed him that the clerk's office was requiring the section 2—1401 petition. There is nothing in the record that indicates this petition was served on the State's Attorney's office or the office of the Attorney General.

On November 15, 1993, Smith filed a motion for refund of bond notwithstanding notice of the State tax lien because, he asserted, he had learned on November 1, 1993, that the clerk would not refund the bond because of the tax lien. A notice of motion in the record indicates that Smith served the Attorney General's office and the State's Attorney's office with this motion. The proof of service was signed but not notarized.

On November 18, 1993, Smith and an assistant State's Attorney appeared before Judge Salone on this motion. No one representing

the Attorney General's office was present, but Smith asserted that he had provided that office with notice of the motion. The judge continued the hearing to December 13.

On December 13, 1993, the Attorney General's office filed a response to Smith's motion. On December 20, 1993, there was a hearing on this motion, at which Smith, his attorney and an assistant Attorney General were present.

After hearing arguments, the judge directed the clerk of the circuit court to refund the bond to Smith notwithstanding the notice of the tax lien. He reasoned that the State did not have a right to the bond proceeds because these had been posted by a third party who would have been unaware that her funds were subject to seizure by the government for outstanding taxes. The judge stayed the execution of this order until January 14, 1994, but he denied the Attorney General's motion to stay the order pending appeal. According to the Attorney General, Smith has received the bond deposit. The Attorney General asks that we reverse the judge's grant of Smith's motion for refund of bond notwithstanding notice of the State tax lien and remand the case to the circuit court for the proceedings necessary for the Department of Revenue to recover the funds from Smith.

The Attorney General argues that the judge erred in refunding the bond for two reasons. First, the State had a valid lien against the bond deposit, and this lien had priority over Smith's claim for attorney fees. Second, there was a judgment of bond forfeiture, and Judge Salone did not have jurisdiction to vacate this judgment.

■ The dispositive issue in this appeal is whether the State was entitled to a lien against the bond deposit for its tax assessment against the defendant. In the absence of express statutory authority, the bail bond money held by the clerk is not subject to attachment or garnishment. (*A-1 Lithoplate, Inc. v. AFS Publishing Co.* (1978), 66 Ill. App. 3d 560, 384 N.E.2d 395; *Gende v. Flemming* (1977), 55 Ill. App. 3d 659, 371 N.E.2d 191.) The Attorney General claims that section 15(a) of the Drug Tax Act expressly authorized the State tax lien against the bond deposit. Section 15(a) provides:

"The Department shall have a lien for the tax herein imposed or any portion thereof, or for any penalty provided for in this Act, or for any amount of interest which may be due, upon all the real and personal property of any person assessed with a tax under this Act; however, the lien shall not be available on property which is the subject of forfeiture proceedings under the Narcotics Profit Forfeiture Act or the Criminal Code of 1961." Ill. Rev. Stat. 1991, ch. 120, par. 2165 (now 35 ILCS 520/15(a) (West 1994)).

■ We cannot accept the Attorney General's argument that this

provision authorized the State's lien against the bond deposit. Section 15(a) of the Drug Tax Act authorizes a lien against only the *defendant's* property. A third party, Cecelia Accetturo, posted the bond deposit, not the defendant. The bond deposit was not, therefore, the defendant's property.

The Attorney General argues, however, that there is a "conclusive presumption *** that the bail money posted was the property of the defendant, regardless of who posted the money." In support of his argument, the Attorney General cites several cases in which courts have upheld the retention of bond deposits to pay the defendant's obligations despite the fact that the deposit consisted of funds posted by a third party. These cases, however, hold that the bond deposit is presumptively the defendant's *only* for the purposes of paying fines, costs and judgments against the defendant. See *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194; *People v. Kirkpatrick* (1992), 240 Ill. App. 3d 401, 608 N.E.2d 256; *People v. Markovich* (1990), 195 Ill. App. 3d 999, 552 N.E.2d 1232; *People v. Carrasquilla* (1988), 167 Ill. App. 3d 1069, 522 N.E.2d 139; *People v. Foreman* (1987), 153 Ill. App. 3d 346, 505 N.E.2d 731; *People v. Cox* (1977), 48 Ill. App. 3d 499, 363 N.E.2d 389.

In cases not involving the payment of fines, costs or judgments against the defendant, the presumption that the bond deposit belongs to the defendant does not apply or is rebuttable. As the court stated in *People v. Dorsey* (1982), 109 Ill. App. 3d 218, 226, 440 N.E.2d 394, "bail deposits presumptively belong to the defendant for the purposes of paying fines and costs [citations], but do not presumptively belong to defendant for all purposes." Bail deposits are not presumptively the defendant's, for example, for purposes of paying attorney fees. *People v. Wood* (1980), 91 Ill. App. 3d 414, 414 N.E.2d 759; see also *People v. Sosa* (1990), 195 Ill. App. 3d 828, 552 N.E.2d 1298 (bond money posted by a third party should not be considered as one of the defendant's financial resources for purposes of determining the propriety of a fine).

■ The Attorney General has provided no authority that a bond deposit is presumed to belong to a defendant for purposes of paying a tax assessment. The tax assessment was not a cost or a judgment against the defendant. Under section 16(c) of the Drug Tax Act, the Department of Revenue may obtain a judgment against a defendant in the amount of its tax assessment (see 35 ILCS 520/16(c) (West 1994)), but there is no evidence in the record that the Department obtained such a judgment in this case.

The Attorney General has also failed to persuade us that the tax assessment was a fine. Although the notices of tax liability and tax

lien stated that they included a "penalty," this does not demonstrate that the tax lien was a "fine." A "fine" and a "penalty" are not necessarily the same thing (see *Wilkes v. Deerfield-Bannockburn Fire Protection District* (1979), 80 Ill. App. 3d 327, 399 N.E.2d 617 (the word "penalty" is broader in scope than the word "fine" and includes fines, forfeitures and other forms of punishment)), and the Attorney General has failed to argue or persuade us that they are the same in this case. In fact, the Attorney General merely argues that the tax assessment was "akin to a fine."

In addition, any presumption that the bond deposit belonged to the defendant was rebutted by the evidence in the record that Cecelia Accetturo posted these funds. See *Kirkpatrick*, 240 Ill. App. 3d at 404-05 (any presumption that the bond deposit funds belonged to the defendant for purposes of paying attorney fees was rebutted by evidence that the defendant's husband's aunt had provided the funds).

Moreover, contrary to the Attorney General's argument, Accetturo did not have notice from the bond form that the money she posted could be retained to pay a tax if the defendant did not comply with the conditions of the bond. Pursuant to section 110—7(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 38, par. 110—7(a) (now 725 ILCS 5/110—7(a) (West 1994))), the bond form contained a notice to Accetturo that, if the defendant failed to comply with the conditions of the bond, the money she posted could be "used to pay costs, attorney's fees, fines, or other purposes authorized by the court." As we have explained, the tax assessment was not a fine. It also was not a cost or attorney fees, and the judge did not authorize the bond deposit to be used to pay the tax assessment.

The Attorney General concedes that private judgment creditors cannot attach or garnishee bond deposits. (See, *e.g., A-1 Lithoplate*, 66 Ill. App. 3d at 562.) He argues, however, that the lien in this case is "not the type of private judgment or obligation traditionally precluded from application against the bail proceeds" because it arises out of the criminal charges underlying the bond and is expressly authorized by statute.

Even if the Department of Revenue were not a private judgment creditor in this case, we believe it had no authority to place a tax lien against the bond deposit because these funds belonged to a third party. In addition, the rationale the *A-1 Lithoplate* court provided for prohibiting private judgment creditors from garnishing or attaching bond deposits supports our decision that the Department of Revenue was not entitled to a lien against the bond deposit.

■ In holding that a private judgment creditor may not attach a bond deposit, the *A-1 Lithoplate* court stated that the clerk who

holds this money retains it solely to be disposed of as directed by statute. (*A-1 Lithoplate*, 66 Ill. App. 3d at 562-63.) No Illinois statute authorized garnishment of bail bond money by a private judgment creditor. The court also provided policy reasons for its holding. The court stated that such attachments would interfere with the disposition of criminal cases because a criminal court judge's distribution of the bond deposit would depend on how another judge ruled on the rights of the private judgment creditors. (*A-1 Lithoplate*, 66 Ill. App. 3d at 562.) The State tax lien in this case has already interfered with the distribution of the bond deposit in this case. Were we to uphold the State's lien claim, it might cause further delay in the distribution of the bond deposit while a judge decided the propriety of the tax assessment. See 35 ILCS 520/16(c) (West 1994).

The *A-1 Lithoplate* court further reasoned that allowing private creditors to garnish bond deposits would undermine the purpose of the bail bond system.

> "If an accused had no hope of regaining his bail bond money even after he complied with the terms of his bond, one of his supposed primary motivations for appearing at trial would vanish, and he would be given an additional reason to flee the jurisdiction to avoid standing trial." (*A-1 Lithoplate*, 66 Ill. App. 3d at 562.)

Also, third parties might be reluctant to post bond money if this money could be subject to garnishment, and attorneys might be reluctant to represent defendants if the bond deposit might not be available to pay attorney fees. By preventing the refund of bond deposits to defendants, to third parties who post bond or to attorneys, the Department of Revenue's tax lien against a bond deposit could have the same negative effects on the bail bond system. These policy reasons and the lack of any authority for the State tax lien against the bond deposit support our conclusion that the judge's ruling on Smith's motion for refund of bond notwithstanding notice of the State tax lien was correct.

We now address the Attorney General's argument that the judge erred in refunding the bond deposit to the defendant's attorney because there was a judgment of bond forfeiture and because the judge had no jurisdiction to vacate this judgment. The Attorney General contends that a trial judge loses jurisdiction to vacate a bond forfeiture judgment 30 days after its entry. See, *e.g., People v. Wilson* (1990), 198 Ill. App. 3d 555, 555 N.E.2d 1159.

The Attorney General argues further that, even if the judge could regain jurisdiction through the filing of a petition to vacate the judgment under section 2—1401 of the Code of Civil Procedure (see *People v. Canaccini* (1977), 52 Ill. App. 3d 811, 368 N.E.2d 133), the petition

in this case was not before the judge at the time he ordered the bond refund, and it was defective. According to the Attorney General, the record indicates that Smith did not file this petition until October 7, the day after the judge ordered the bond refund. In addition, the petition was unsworn, it was unsupported by an affidavit or other matter not of record, and the defendant gave no notice of its filing or presentment. Moreover, the petition failed to demonstrate that the defendant had a meritorious defense to the bond forfeiture judgment, that he had acted with due diligence in presenting this defense to the court, that he had acted with due diligence in filing the petition, or that the fact the defense was not presented to the court was through no fault of his own.

■ As we have explained, the Department of Revenue was not entitled to a lien against the bond deposit because it was not the defendant's property. For this reason, the Attorney General does not have standing to assert defects in the defendant's section 2—1401 petition or to argue that the judge erred in vacating the bond forfeiture and refunding the deposit to Smith. See *Stoller v. Exchange National Bank* (1990), 199 Ill. App. 3d 674, 557 N.E.2d 438 (the appellants could not claim error from a trial judge's rulings that did not affect them).

The Cook County State's Attorney, on the other hand, was in a position to make these arguments, but he did not. As section 110—7(g) of the Code of Criminal Procedure indicates, the county would have been entitled to the forfeited bond deposit:

> "If the accused does not comply with the conditions of the bail bond the court having jurisdiction shall enter an order declaring the bail to be forfeited. *** [T]he court shall enter judgment for the State if the charge for which the bond was given was a felony or misdemeanor[.] *** The deposit made in accordance with paragraph (a) shall be applied to the payment of costs. If any amount of such deposit remains after the payment of costs it shall be applied to payment of the judgment and transferred to *** the treasury of the county wherein the bond was taken if the offense was a violation of any penal statute of this State." Ill. Rev. Stat. 1991, ch. 38, par. 110—7(g) (now 725 ILCS 5/110—7(g) (West 1994)).

Despite the county's right to the forfeited bond deposit, the State's Attorney did not challenge the propriety of the section 2—1401 petition or the judge's decision to refund the bond deposit to Smith. When the judge ordered the clerk to refund the bond to Smith, there were two assistant State's Attorneys present, but they remained silent when the judge discussed the bond refund with the defendant and Smith. The State's Attorney's office also did not file a response or

motion to strike the section 2—1401 petition, and it did not file a notice of appeal from the judge's decision to vacate the bond forfeiture judgment. Consequently, the State's Attorney's office waived any challenge to the judge's decision to vacate the judgment of bond forfeiture and to refund the bond deposit to Smith. See *Danaher v. Knightsbridge Co.* (1978), 56 Ill. App. 3d 977, 372 N.E.2d 862 (an appellate court lacks jurisdiction to review a trial judge's order vacating a judgment if 30 days elapse before the appeal is filed).

For these reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.