# Illinois Official Reports

## Appellate Court

---

### *Root v. Carter*, 2021 IL App (4th) 200157

---

| | |
|---|---|
| Appellate Court Caption | CURTIS ROOT, Plaintiff-Appellee, v. KRISTIN CARTER, Defendant-Appellant. |
| District & No. | Fourth District<br>No. 4-20-0157 |
| Filed | July 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Douglas County, No. 18-LM-49; the Hon. Gary A. Webber, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | John Roska, of Land of Lincoln Legal Aid, Inc., of Champaign, for appellant.<br><br>No brief filed for appellee. |
| Panel | PRESIDING JUSTICE KNECHT delivered the judgment of the court, with opinion.<br>Justices Turner and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Kristin Carter, appeals from the Douglas County circuit court's order (1) turning over to plaintiff, Curtis Root, a $150 bond posted on behalf of Carter and the underlying body attachment order that resulted in the posting of that bond and (2) denying her motion to reconsider the aforementioned order. Carter argues this court should vacate the court's turnover order and remand the cause with instructions to order the $150 bond be returned to her. We vacate the circuit court's turnover order and remand with directions.

¶ 2                                        I. BACKGROUND

¶ 3        In October 2018, Root commenced an eviction proceeding in the Douglas County circuit court against Carter, who had rented a home from him in Tuscola, Illinois, where she lived with her two dependent children. Appearing *pro se* at a November 2018 hearing, Carter consented to an eviction order and a judgment for $3450.

¶ 4        Root commenced supplementary collection proceedings in January 2019. At that time, Carter was issued a citation to discover assets. Carter appeared for a citation hearing on February 28, 2019. According to the docket entry sheet, Carter, after "sworn testimony," agreed to pay $50 per month beginning March 20, 2019. The circuit court ordered Carter to appear on May 21, 2019, "for status." Following the May status hearing, Carter was ordered to appear at another status hearing on November 18, 2019.

¶ 5        Carter failed to appear at the November hearing, and the circuit court, on Root's motion, ordered a body attachment to issue and fixed bond at $1500, "10% rule to apply." The attachment commanded Carter to be arrested and brought to court "to answer to charge for contempt of Court."

¶ 6        On November 22, 2019, Carter was arrested in Shelby County and taken to jail. Later that day, a relative, Sheila Fritts, posted $150 for Carter's release. Upon her release, Carter signed and received a document titled "Other County Bail Bond," which stated she had been "charged with the offense of contempt of court." The document additionally contained a clause titled, "Assignment of Bail Bond by the Defendant." The clause stated, "I hereby authorize the return of monies posted above to the person shown on this bail bond as having provided the monies for my bail after all conditions of this bail bond have been met," under which Carter's signature is visible. Carter was ordered to appear at the Douglas County courthouse on December 31, 2019.

¶ 7        At the December 2019 hearing, Carter appeared for the first time represented by counsel. At the hearing, Carter orally moved for a refund of the $150 bond posted by Fritts. Carter argued the court failed to serve her with an order to show cause prior to issuing the body attachment in violation of section 12-107.5 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/12-107.5(a) (West 2018)). Carter further argued, citing Illinois Supreme Court Rule 277(f) (eff. Jan. 4, 2013), the supplementary proceedings automatically terminated by operation of law six months after her initial citation hearing on February 28, 2019. The court found the proceeding was not "an extension *per se*" of the citation hearing, but rather a "review of a payment order that was in place," and therefore the automatic termination provision set forth in Rule 277(f) was not applicable. After determining the judgment had not been paid, the

court denied Carter's request to be refunded the $150 and ordered the $150 bond be turned over to Root.

¶ 8 Carter filed a motion to reconsider, arguing the court's issuance of the body attachment was improper because it failed to first serve Carter with an order to show cause and it additionally failed to make required statutory findings prior to ordering the $150 be turned over to Root. Carter also filed a motion to vacate the payment order, arguing she did not receive notice of her right to assert exemptions against certain income or assets as required by statute and, because Carter had no nonexempt income or assets with which to pay the $50 monthly payments, the payment order must be vacated. At a February 2020 hearing, the court granted Carter's motion to vacate the payment order but denied the motion to reconsider a return of the bond money. The court concluded the May 2019 and November 2019 hearings were not a continuation of the citation proceedings, but rather periodic reviews of the payment order, and therefore Rule 277(f) did not operate to automatically terminate the proceedings. It additionally concluded its order turning over the $150 bond to Root was not improper because "the person posting it has not claimed a right."

¶ 9 This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11 On appeal, Carter argues this court should vacate the circuit court's turnover order and remand the cause with directions to order the $150 bond be refunded to Carter. Specifically, Carter argues (1) the court failed to serve her with an order to show cause prior to issuing the body attachment, and therefore her arrest was improper; (2) the court failed to make the requisite statutory findings prior to entering the turnover order; (3) the court erroneously determined Carter had no right to claim a return of the bond posted by Fritts, and Fritts had not claimed a right to the monies; and (4) the November 2019 court date constituted an unauthorized continuation of the citation proceeding.

¶ 12 Prior to addressing Carter's arguments, we note Root has not filed a brief with this court. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976), the Illinois Supreme Court explained the options available to a reviewing court when an appellee does not file a brief:

> "We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed."

In other words,

> "[I]n the absence of an appellee's brief, a reviewing court has three options: (1) the court may serve as an advocate for the appellee and decide the case when the court determines that justice so requires; (2) the court may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of an appellee's brief; or (3) the court may reverse the trial court when the appellant's brief

demonstrates *prima facie* reversible error that is supported by the record." *Village of Lake in the Hills v. Niklaus*, 2014 IL App (2d) 130654, ¶ 14, 11 N.E.3d 26.

For the reasons set forth below, we find Carter's brief and the record demonstrate *prima facie* reversible error. Accordingly, we vacate the trial court's judgment and remand with directions.

¶ 13     The issues presented in this case involve the application of section 12-107.5 of the Procedure Code regarding (1) the procedures required to issue a body attachment order to answer for a charge of civil contempt and (2) the return of bond money posted by a third party in response to an erroneously issued body attachment order. Because these are questions of law, our review is *de novo*. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553, 861 N.E.2d 633, 643 (2006).

¶ 14                                          A. Body Attachment

¶ 15     We first address Carter's argument the court's issuance of the body attachment order was improper. We agree.

¶ 16     "[A] writ of body attachment is 'merely [a] means by which to bring [an] alleged contemptor before the court when the failure to comply with an order of the court is the alleged contemptuous behavior.' " *People v. Thompson*, 2012 IL App (3d) 100188, ¶ 21, 966 N.E.2d 1147 (McDade, J., specially concurring) (quoting *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026, 793 N.E.2d 900, 904 (2003)). Section 12-107.5 of the Procedure Code states:

> "No order of body attachment or other civil order for the incarceration or detention of a natural person respondent to answer for a charge of indirect civil contempt shall issue unless the respondent has first had an opportunity, after personal service *** to appear in court to show cause why the respondent should not be held in contempt." 735 ILCS 5/12-107.5(a) (West 2018).

The Procedure Code further provides the notice to the respondent shall be an order to show cause. *Id.* § 12-107.5(b).

¶ 17     Here, the court's issuance of the body attachment order was improper because it failed to issue an order to show cause prior to issuing the body attachment and set the bond at a sum greater than permitted by statute. There is no dispute, and the trial court admitted, it did not serve Carter with an order to show cause prior to issuing the body attachment, which specifically stated Carter was being commanded to appear "to answer to a charge of contempt of court." Moreover, the body attachment stated bond was to be set in the sum of $1500, "10% rule to apply." The court's explanation at the hearing on Carter's motion to reconsider that the body attachment "d[id]n't really say *** what kind of contempt the [previous] judge is referring to" is perplexing because it also acknowledged the body attachment was issued due to Carter's failure to appear. The fact the court did not thereafter conduct a contempt hearing does not negate the fact it issued a body attachment commanding Carter to appear to answer for a charge of contempt. The court failed to abide by the procedures set forth by statute when it both (1) issued the body attachment order without first serving Carter with an order to show cause and (2) set the bond at an amount exceeding the maximum sum allowed by statute ($1000). See *id.* We agree with Carter the body attachment order was invalid.

## B. Turnover Order

We turn next to Carter's argument the court failed to conduct the three-part inquiry required by statute before ordering the $150 bond invaded and applied to the judgment.

Section 12-107.5(e) of the Procedure Code states:

> "Upon discharge of any bond secured by the posting of funds, the funds *shall* be returned to the respondent or other party posting the bond, less applicable fees, *unless* the court after inquiry determines that: (1) the judgment debtor willfully has refused to comply with a payment order entered in accordance with Section 2-1402 or an otherwise validly entered order; (2) the bond money belongs to the debtor as opposed to a third party; and (3) that any part of the funds constitute non-exempt funds of the judgment debtor, in which case the court may cause the non-exempt portion of the funds to be paid over to the judgment creditor." (Emphases added.) *Id.* § 12-107.5(e).

Here, the court failed to conduct any inquiry whatsoever prior to ordering Carter's $150 cash bond be applied against the judgment. The Procedure Code specifically directs the funds "*shall* be returned to the respondent *** *unless*" the court determines the aforementioned circumstances are present. (Emphases added.) *Id.* Moreover, the record clearly shows none of the circumstances that would justify turning over the bond to Root were present in this case. First, no evidence was presented Carter "willfully *** refused to comply" with her payment order. Additionally, the bond money did not belong to Carter, but rather to Fritts, the family member who posted the funds. Finally, any suggestion the funds provided by Fritts constituted nonexempt funds belonging to Carter is contradicted by the court's statement "it is highly unlikely there was nonexempt income coming from [Carter] that the court could have entered [a payment] order."

Additionally, we find no support for the court's determination Fritts forfeited her claim to a return of the bond money by failing to claim a right to the funds. The Procedure Code's requirement that civil bonds "shall be returned to the respondent or other party posting the bond" (*id.*) clearly contemplates the return of bond funds to third parties and contains no rule stating a third party's failure to intervene in the underlying action in order to recover their funds will result in forfeiture of any claim to those funds. The document Fritts signed, titled "Notice to Person Providing Bail Money Other Than Defendant," advised only that the bond *could* be forfeited "if the defendant failed to comply with the conditions of the bond," and the court "may also enter an order to pay costs, attorney's fees, fines or other purposes authorized." The notice did not warn that a third party's funds provided for bail could be forfeited to the defendant's creditor or the third party must initiate legal proceedings to secure a refund.

Although we agree with Carter the court erroneously turned over the $150 cash bond to Root, we disagree with her assertion she is the party entitled to the refund. Carter signed an assignment of bail bond form authorizing the return of the bond funds to Fritts. Accordingly, we conclude the funds should be returned to Fritts. *Cf. People v. Kirkpatrick*, 240 Ill. App. 3d 401, 407, 608 N.E.2d 256, 259 (1992) (stating trial court in criminal case had authority under statute to direct cash bond refund be paid to the aunt of the defendant's husband who provided funds for bail bond).

In sum, the circuit court improperly applied Carter's $150 cash bond to the judgment. We vacate the court's order applying the bond funds to the judgment and remand with directions to refund the $150 cash bond to Fritts. Because we vacate the circuit court's turnover order based on the arguments discussed *supra*, we need not address Carter's final argument the

November 2019 hearing constituted an unauthorized extension of the citation proceeding.

¶ 25                                                III. CONCLUSION

¶ 26      For the reasons stated, the turnover order entered against Carter by the Douglas County circuit court is hereby set aside, and the cause is remanded with directions to return the $150 bond to Fritts.

¶ 27      Vacated and remanded with directions.